135 So.2d 857 (1961)
P.A. SHELL et al., Petitioners,
v.
STATE ROAD DEPARTMENT of Florida, an Agency of the State of Florida, Respondent.
No. 31165.
Supreme Court of Florida.
November 29, 1961.
Rehearing Denied January 18, 1962.
Carver, Langston & Massey, Lakeland, for petitioners.
Clyde G. Trammell, Jr., Tallahassee, for respondent.
HOBSON, Justice.
This case arises on a petition for a writ of certiorari to the District Court of Appeal, *858 Second District. The petitioner asserts that the opinion of the district court of appeal is in direct conflict on the same point of law with decisions of this court.
The petitioner was the defendant in an eminent domain proceeding in the circuit court. Pursuant to Rule 1.28, Florida Rules of Civil Procedure, 30 F.S.A., he made a motion prior to trial asking that the circuit court require the respondent, the State Road Department, to produce for inspection, copying or photographing, all surveys, drawings, maps, plats, road construction statistics, specifications, appraisals, appraisers' work sheets and all other documents in the hands of the respondent affecting the valuation of the petitioner's lands. The circuit court granted the motion to produce and the State Road Department petitioned the district court of appeal for a writ of certiorari to review the interlocutory order allowing such production.
The district court of appeal reversed the order of the circuit court and held that on authority of Brooks v. Owens, Fla., 97 So.2d 693, it had jurisdiction to review by certiorari the interlocutory order of the circuit court. The court also held that the information sought by petitioner was a "work product", and that the information was as readily available to the petitioner as it was to the respondent; and that, therefore, the circuit court erred in compelling the discovery of the information.
The petitioner contends that the holding of the district court of appeal on the question of jurisdiction is in direct conflict on the same point of law with the decisions of this court in Wolf v. Industrial Supply Corporation, Fla., 62 So.2d 30 and Ramagli Realty Company v. Craver, Fla., 121 So.2d 648, and is therefore in error. It is also asserted that the district court of appeal's holding that the information sought was not subject to discovery is in error and is in direct conflict with the decision of this court in Dupree v. Better Way, Inc., Fla., 86 So.2d 425.
Our jurisdiction stems from the asserted conflict between the decision in the instant case and our opinion in Ramagli Realty Company v. Craver, supra, in which the following statement appears:
"Supreme Court rules prescribe that appeals from interlocutory orders at common law are limited to orders relating to venue or jurisdiction over the person. Other interlocutory orders rendered in common law actions may be reviewed only on an appeal prosecuted from the final judgment." [121 So.2d 650] (Italics supplied.)
Although the Ramagli case involved a somewhat different though related, point of law, the statement quoted above regarding the limitation which the present appellate rules place upon review of interlocutory orders in common law actions is on its face in direct conflict with the holding of the district court of appeal that it had jurisdiction in the instant case.
Whether the statement referred to in Ramagli is obiter dictum is of no consequence in light of our holding in Sunad, Inc. v. City of Sarasota, Fla., 122 So.2d 611. The important fact is that the language in Ramagli pronounces a rule, which, if followed in the instant case, would necessarily produce a result different from that reached by the District Court. The Ramagli case states in effect, that interlocutory orders in common law actions are not reviewable except on appeal from final judgment, unless the orders relate to venue or jurisdiction over the person; the District Court in the instant case has held that it does have such jurisdiction even though the requirements outlined in Ramagli were not met. Therein lies the conflict.
We hold, therefore, that based upon this antinomy, we have jurisdiction in this case, and we shall now proceed to resolve the confusion in the present state of the law which has resulted from the pronouncement of these conflicting rules.
*859 The uncertainty as to the law on this point results from the fact that aside from the Ramagli case, there has been no pronouncement by this court on the point in issue since the enactment of Amended Article V of the Florida Constitution, F.S.A., and since the implementation of our present rules of appellate procedure. There is no question but that prior to the changes spoken of there was a well recognized exception to the rule that interlocutory orders at common law are reviewable only upon appeal from final judgment. This exception, which this court recognized in Wolf v. Industrial Supply Corporation, supra, applies only when it is clearly apparent that there has been a departure from the essential requirements of law and that the petitioner does not have a full and adequate remedy by appeal after final judgment. See also Brooks v. Owens, Fla., 97 So.2d 693; Atlantic Coastline Railroad Company v. Allen, 40 So.2d 115; Kilgore v. Bird, 149 Fla. 570, 6 So.2d 541.
All of the above cited cases were decided before the adoption of Amended Article V of the Constitution of Florida providing for the creation of the District Courts of Appeal. In Article V, Section 5(3) of the Florida Constitution it is provided:
"The supreme court * * * may provide for review by such courts [District Courts of Appeal] of interlocutory orders or decrees in matters reviewable by the district courts of appeal."
Pursuant to this constitutional authority, the Supreme Court adopted Rule 4.2 entitled "Interlocutory Appeals" as a part of the Florida Appellate Rules, 31 F.S.A., Rule 4.2, subd. a provides:
"Appeals from interlocutory orders or decrees in equity, orders or decrees entered after final decree, and orders at common law relating to venue or jurisdiction over the person, may be prosecuted in accordance with this rule; provided that nothing contained in this rule shall preclude the review of such orders and decrees on appeal from the final decree in the cause."
Rule 3.1 provides:
"Except where petitions for certiorari are permitted by law or by these rules all appellate review shall be by appeal."
Thus, it appears from both the present appellate rules and the statement in the Ramagli case quoted above that there is no specific grant of jurisdiction to the district courts of appeal in such cases. However, notwithstanding the language in Ramagli, it was not the intention of this court, by adopting the present appellate rules, to abrogate the jurisdiction of our district courts of appeal to review by certiorari interlocutory orders at common law if the requirements of the exception outlined in Wolf v. Industrial Supply Corporation, supra, are fully met. We therefore recede from our holding in Ramagli insofar as it conflicts with our holding herein. In so doing, we also concede the correctness of the District Court's decision only insofar as it recognized the exception previously discussed regarding certiorari jurisdiction over interlocutory orders in actions at law.
Having disposed of the question of direct conflict, we next consider the merits of this proceeding. It is our opinion that the requirements of the exception heretofore outlined were not met in the instant case and that the District Court of Appeal erred in entertaining the writ of certiorari to review the interlocutory order of the Circuit Court. As stated previously, one of the indispensable elements of the exception is that an essential requirement of law must have been violated. The District Court of Appeal held that the order compelling production of the documents sought constituted a departure from the essential requirements of law because the information sought was a "work product" and as such was not subject to inspection by the condemnee before trial. We disagree.
*860 The concept of an attorney's work product being immune from discovery under the Federal Rules of Civil Procedure was first recognized and announced by the U.S. Supreme Court in the oft-cited case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 393, 91 L.Ed. 451. In that case it was held that statements of witnesses secured by an attorney in advance of trial, while not strictly constituting matter privileged under the attorney-client relationship, should nevertheless be immune from discovery because such a procedure would be contrary to the public policy underlying the orderly prosecution and defense of legal claims. It was held essential that an attorney in preparing a case should be clothed with "a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel". For a discussion of this case as it has been cited in connection with subsequent federal decisions involving discovery of the opinions of expert witnesses and material prepared and gathered by them in preparation for trial, see 4 Moore's Federal Practice, Section 26.24.
The principle established in Hickman v. Taylor, supra, holding the work product immune from discovery procedures has been recognized and accepted in a number of cases in this state. See Atlantic Coastline Railroad Company v. Allen, Fla., 40 So.2d 115; Miami Transit Company v. Hurns, Fla., 46 So.2d 390; McGee v. Cohen, Fla., 57 So.2d 658; Seaboard Airline Railway Company v. Timmons, Fla., 61 So.2d 426; 10 Fla.Jur., Discovery, etc., Section 6; 7 Fla. Law and Practice, Depositions and Discovery, Section 25.
As pointed out by this court in Atlantic Coastline Railroad Company v. Allen, supra [40 So.2d 116], the rationale of the work product rule is based not upon factors of privilege or relevancy but on the basis of policy. It was held in that case that the work product was not subject to discovery and further that "it matters not whether the product is the creature of the party, his agent or his attorney".
The question of whether or not the opinions and reports of expert witnesses retained by a party preparatory to litigation constitute a work product has not been specifically decided in this state. See American Ladder and Scaffold Company v. Eadie, Fla.App., 120 So.2d 65, wherein the point was raised but not resolved, the case being decided on other grounds.
A review of the applicable Florida authorities cited above on the subject of work product, however, indicates that in an ordinary case data compiled or prepared by experts in preparation for trial would constitute a part of the work product of a party or his agents. Professor Moore indicates in his treatise that the denial of discovery of such data is usually founded on the general basis of unfairness to the person who engaged the expert. 4 Moore's Federal Practice, Section 26.24.
Nevertheless, conceding that in private litigation the reports and opinions of experts should be considered a "work product" exempt from compulsory discovery, we are convinced that the "work product" immunity should not extend to the type of information[1] sought in this eminent domain proceeding. We realize that the rule pronounced herein with reference to condemnation proceedings is diametrically opposite to the prevailing rule in ordinary litigation. However we are convinced that there is no inconsistency because both rules are based upon sound public policy when the sphere in which each operates is properly analyzed.
In reaching our conclusion we have given due consideration to the exhortation of Rule A of the 1954 Rules of Civil Procedure:
"These rules shall be construed to secure the just, speedy and inexpensive determination of every action."
*861 It must be borne in mind that in a condemnation proceeding the property of the land owner is subject to taking by the condemnor without the owner's consent. The condemnee is a party through no fault or volition of his own. Our Declaration of Rights, Section 12, Constitution of the State of Florida, F.S.A., makes it incumbent upon the condemnor to award "just" compensation for the taking. In view of this constitutional mandate, the awarding of compensation which is "just" should be the care of the condemning authority as well as that of the party whose land is being taken.
Unlike litigation between private parties condemnation by any governmental authority should not be a matter of "dog eat dog" or "win at any cost". Such attitude and procedure would be decidedly unfair to the property owner. He would be at a disadvantage in every instance for the reason that the government has unlimited resources created by its inexhaustible power of taxation. Moreover it should be remembered that the condemnee is himself a taxpayer and as such contributes to the government's "unlimited resources".
Considering the nature of the condemnation proceedings, we hold that there is no violation of the essential requirements of law in compelling the State Road Department to produce in advance of trial information bearing on the issue of "just" compensation.
We have heretofore held in Dade County v. Brigham, 47 So.2d 602, 18 A.L.R.2d 1221 that the requirement of "just" compensation necessitates reimbursement, in a proper case, of fees of expert witnesses employed and used by the condemnee. We perceive no reason why the condemning authority should not also make available information acquired by its own experts prior to trial.
We do not believe this procedure will place the State Road Department at a disadvantage in trying its case. We can envisage no "unfairness" to this governmental agency. If the governmental unit or agency is seeking to effectuate the "summum bonum", as it should in every condemnation suit, there is no justification for cutting corners or being secretive to the possible detriment of the individual land owner whose property is being taken from him against his will.
It may be that the condemnor will derive an advantage by disclosing these pertinent matters prior to trial. It might develop that the condemnee, after learning the basis for the evaluation of his property, will decide to settle the issues without going to trial, thereby resulting in a "speedy and inexpensive determination" of the case.
Inasmuch as we hold that the order of the circuit court herein violated no essential requirement of law it follows that the jurisdictional requisites outlined in Wolf v. Industrial Supply Corporation, supra, were not met in the instant case. Therefore the District Court of Appeal erred in entertaining the writ of certiorari and in reversing the order of the circuit court. Accordingly the judgment of the District Court of Appeal is hereby quashed with directions that the order of the circuit court be reinstated. The cause is remanded to the district court for further proceedings not inconsistent with this opinion.
It is so ordered.
ROBERTS, C.J., and TERRELL and DREW, JJ., concur.
THORNAL, J., dissents on jurisdiction and agrees on merits.
THOMAS and O'CONNELL, JJ., dissent.
THORNAL, Justice (concurring in part and dissenting in part).
I concur in the opinion of Mr. Justice HOBSON on the merits of the controversy but dissent from the holding that this court has jurisdiction. On that aspect of the matter *862 I concur in the dissent prepared by Mr. Justice O'CONNELL. Since the majority holds that we have jurisdiction I agree to the disposition of the merits as announced by Justice HOBSON.
O'CONNELL, Justice (dissenting).
I regret that I must dissent from the majority opinion.
The majority opinion holds that we have jurisdiction because of a conflict between the decision of the district court herein and the following statement in our opinion in Ramagli Realty Company v. Craver, Fla. 1960, 121 So.2d 648, 650:
"* * * Supreme Court rules prescribe that appeals from interlocutory orders at common law are limited to orders relating to venue or jurisdiction over the person. Other interlocutory orders rendered in common law actions may be reviewed only on an appeal prosecuted from the final judgement. * * *"
As I understand the decision in the Ramagli case we decided that the district court had no jurisdiction to review the final judgment of the trial court therein because the appeal was taken more than 60 days after entry thereof. In view of this the above quoted statement would be obiter dicta and would not furnish the basis for a conflict.
However, assuming that the above statement was involved in reaching the decision in the Ramagli case it does not in my opinion have the effect attributed to it in the majority opinion.
So far as the statement goes it is absolutely correct for it correctly summarizes the appellate rules on the question. However, neither the statement nor the appellate rules involved destroy or could destroy the power of the district courts of appeal to entertain review of interlocutroy orders at common law in those exceptional cases where the order in question marks a departure from the essential requirements of the law and it appears that the complaining party does not have a full, adequate, and complete remedy by appeal after final judgment.
The district courts of appeal under the constitution now have the identical power to issue common law writs of certiorari that this Court had under Article V, Fla. Const. prior to the amendment thereof which became effective July 1, 1957.
During the time in which this Court was vested with the authority to issue such writs we decided in numerous cases that this Court, in its discretion, could issue such writs directed to interlocutory orders in common law causes where it clearly appeared that the complaining party would be without a full, adequate and complete remedy by an appeal after final judgment. Kilgore v. Bird, 1942, 149 Fla. 570, 6 So.2d 541; Wolf v. Industrial Supply Corp., Fla. 1952, 62 So.2d 30; Brooks v. Owens, Fla. 1957, 97 So.2d 693.
I think that the district courts have the same power to issue writs of certiorari in cases such as this as we did prior to July 1, 1957.
The majority opinion recognizes this fact for it says:
"* * * However, * * * it was not the intention of this court, by adopting the present appellate rules, to abrogate the jurisdiction of our district courts of appeal to review by certiorari interlocutory orders at common law if the requirements of the exception outlined in Wolf v. Industrial Supply Corporation, supra, are fully met. * *"
The last quoted statement from the majority opinion in my opinion is in irreconcilable conflict with that portion of the opinion which leans on the statement in the Ramagli case for the basis of the conflict. On the one hand the majority opinion relies on the Ramagli case for a holding that interlocutory orders in common law cases may not be reviewed by the district courts by certiorari, then on the other hand it makes it quite *863 clear that those courts do have such authority.
The foregoing makes it quite clear that on this point there is no conflict between the decision of the district court and the Ramagli case, or any other case cited by the parties, or in the majority opinion.
The district courts of appeal have been proceeding under the view that they have the authority to issue such writs in similar cases and have done so. See Goldstein v. Great Atlantic and Pacific Tea Company, Fla.App. 1960, 118 So.2d 253; Boucher v. Pure Oil Company, Fla.App. 1958, 101 So.2d 408; State Road Dept. of Fla. v. Cline, Fla.App. 1960, 122 So.2d 827. I think they were correct in their view that they have this authority.
The common law writ of certiorari is one issued or withheld in the discretion of the court. Appellate courts can review the discretionary acts of trial courts only where it is shown that the trial court abused its sound judicial discretion.
However, our power to review a district court of appeal's discretionary act is even more limited, for it is not enough to show that the district court abused its sound judicial discretion. It must be shown, first, that in doing so it rendered a decision which would give this court jurisdiction to review it by appeal or certiorari under the provisions of Sec. 4, Art. V, Fla. Const.
It is clear from the majority opinion that the district court's decision on the merits is not in conflict with any rule of law in existence in Florida at the time of entry of the decision for the majority opinion admittedly announces a new rule of law on discovery in condemnation cases.
This being the case I see no basis for conflict on the merits between the district court's opinion and any other which would enable us to review it.
I would make clear here that I fully agree that a condemning authority can be and should be made to produce all of the maps, surveys and other information relating to the lands to be taken and the use to be made of the land in order that the condemnee's expert witnesses may have this information in arriving at their opinions as to the value of the property taken as well as the damage to the remainder of the lands.
Under present rules of practice and procedure and under present rules of law I do not agree that the condemning authority ought to be required to furnish the work product of its expert witnesses relating to the value of the lands to be taken. To do this without requiring the condemnee to furnish the same information will give the latter an unfair advantage over the condemning authorities which for the most part are governmental bodies representing the people.
I agree with the majority opinion that condemning authorities ought not to have an advantage over those whose lands are being taken involuntarily. However, governmental agencies in our system represent all the citizens who are the source of the funds which pay the judgments rendered in such cases.
These citizens and taxpayers are entitled not to be put at a disadvantage just as the individual whose land is being taken is so entitled.
Under the decisions of this Court the landowner is placed on an equal footing with the condemnor by reason of our holding that the fees of his expert witnesses and other necessary expenditures must be paid as costs of the suit. If the landowner is given access to all the maps, surveys, and other documents which have a bearing on the amount of land taken and use to be made thereof by the condemnor, which right I would give to him and which he probably has anyway since those documents in most cases would be records of public agencies available to the public, he will have the same information available upon which to arrive at an opinion as to value and damages as does the condemnor.
*864 I would have no objection to this Court's amending the pertinent rules of civil procedure to eliminate the protection given the work product of both parties in condemnation proceedings. If the rule is to be changed I think it should be done in this manner so that the Bar and interested parties may be heard on the wisdom and effect of such a change before it is made.
For the foregoing reasons I respectfully dissent.
THORNAL, J., concurs in dissent on jurisdiction.
NOTES
[1] As a matter of fact the files of a governmental authority should be and probably are subject to inspection by the public generally at all reasonable hours.