**STATE ROAD DEPARTMENT, et al v. SWINGING DOOR, Inc., et al.**
No. 60-971-L.

Circuit Court, Duval County.

January 5, 1962.

J. Henry Blount and C. Ray Greene, Jr., both of Jacksonville, for petitioners.

Harold B. Wahl of Loftin & Wahl, Jacksonville, for defendant Martin.

Mark Hulsey, Jr. and William D. Jones, Jr., both of Jacksonville for defendant Swinging Door, Inc.

W. A. STANLY, Circuit Judge.

*Pre-trial order:* At pre-trial hearings held on January 2 and January 4, 1962, attended by counsel for the respective parties, the following agreements and orders were made—

1. The pictures and documents initialed "W.A.S." by the court may be admitted into evidence at the trial of this cause without objection or without further authentication.

2. A sketch purporting to show the premises of the Swinging Door, Inc. will be admitted without objection or further authentication provided it is signed by the drafter thereof, dimensions are shown thereon and certain directional arrows removed therefrom.

3. Defendant Lottie P. Martin filed motion under Rule 1.28, Florida Rules of Civil Procedure, to require the plaintiffs to produce certain appraisals, appraisal work sheets, and other data affecting the valuation of her property here condemned, relying on the decision of the Florida Supreme Court in Shell v. State Road Department, case no. 31165, filed November 29, 1961, 135 So. 2d 857, where a similar motion was upheld.

The court announced that it would grant such motion upon the express condition that the defendant Martin likewise furnish

to the condemnor her comparable data, whereupon the defendant Martin, under protest of such condition, withdrew her motion and took an exception to the court's ruling imposing such condition.

4. No more than three real estate expert witnesses will be allowed to testify on behalf of the respective parties.

5. Defendant, the Swinging Door, Inc., will be allowed to proffer testimony relating to its claim for special damages allowed by chapter 73.10 (4), F.S.A., which said claim was previously stricken from said defendant's answer on motion of condemnor.

6. A jury view of the property being taken will be held at the close of all the testimony.

7. The parties agree that the sign located on top of part of the condemned premises is a part of the realty and the value of said sign is a proper element of damage.

8. Both sides will furnish to each other the names and addresses of all of their witnesses to be called at the trial prior to 1 P.M., Friday, January 5, 1962, except that the names of witnesses who will testify concerning attorney's fees may be furnished no later than 1 P.M., Monday, January 8, 1962.

9. The owner or the petitioner may introduce into evidence for the consideration of the jury in awarding just and full compensation for the land taken, all material and relevant facts and circumstances which bear a reasonable relation to the fair market value of the land taken and the improvements thereon, including, but not limited to the fact that a portion of the property was being used as a retail alcoholic beverage business consisting of a bar, cocktail lounge and package store; that this was the highest and best use of said portion of the property at the time, and that the taking of the property herein damaged the premises to such extent that such use could no longer be continued; and in considering the damage to the remainder of the property so taken, the owner or petitioner may show by competent evidence that the remainder of the certain portion of the building located on said property was unsuitable to be rehabilitated as a bar, cocktail lounge and package store; that by reason of the destruction of such potential use as a liquor bar, cocktail lounge and package store, the owner's future use of the property would suffer depreciation to a less valuable use, that is, the loss of such potential use transforms the original highest and best use to a different use which would be less valuable to the owner.

10. In showing the measurement of damages sustained by the land owner by reason of such transformation to a less valuable use of his property, the owner may qualify no more than two expert witnesses who may testify concerning the difference in value between an alcoholic beverage license in active use at the site in question, as distinguished from an alcoholic beverage license which is not in active use at a site, or a so-called "floater" or "in the pocket" type of alcoholic beverage license.