EDELMIRO MARTÍNEZ RIVERA, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, EMINENT DOMAIN SECTION, PEDRO SANTOS BORGES, JUDGE, Respondent.

No. 2861. Decided March 14, 1962.

Edelmiro Martínez Rivera in his own behalf, and Edelmiro Martínez, Jr., for petitioner. J. B. Fernández Badillo, Solicitor General, and Rodolfo Cruz Contreras, Assistant Solicitor General, for respondent.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

This appeal involves the application of the rules of discovery of evidence—depositions, interrogatories and inspection of documents—to the proceedings for condemnation of private property. Before considering the question raised it is necessary to establish clearly the source from whence flows the authority for said application, taking into account that it concerns a special proceeding, with its own highlights in the procedural field.

Section 3 of our Eminent Domain Act, Act of March 12, 1903, 32 L.P.R.A. § 2914, was amended by Act No. 178 of May 4, 1949 (Sess. Laws, pp. 560, 564), to include a paragraph which reads: "The Rules of Civil Procedure shall be applicable to condemnation proceedings, with the exception of such provisions of the rules as are clearly inconsistent with the General Law of Eminent Domain." [1]

---

[1] In the sole occasion in which we have considered this problem, People v. 632 Sq. Meters of Land, 74 P.R.R. 897 (1953), we decided that the provisions of the rules for entry of default and default judgment were clearly inconsistent with the General Law of Eminent Domain, and that a defendant who has an interest in the condemned property cannot be considered in default on the question of fixing the compensation, by virtue of his failure to appear or to file an answer within the afore-mentioned proceeding. The same solution is reached under the present Rule 58.5, 32 L.P.R.A. p. 157 (Supp. 1960), which provides in part, that "A defendant waives all defenses and objections not so presented, but at the trial of the issue of just compensation, whether or not he has previously appeared or

An examination of the provisions of the above-mentioned general Act reveals that the rules on discovery of evidence are not incompatible with the procedure outlined by said Act. On the other hand, since 1958 there were incorporated in Rule 58 of the Rules of Civil Procedure which began to take effect that same year, 32 L.P.R.A. pp. 155–159 (App. 1960), certain special provisions to govern the condemnation proceedings which are an adaptation of Federal Rule 71A. Rule 58.1 states that "These rules [of Civil Procedure] shall govern the procedure for the condemnation... property... except in the cases provided by this Rule 58." Since the rest of said rule—58.2 to 58.10—does not cover the subject of discovery of evidence, the general provisions—Rules 23 to 34, excluding No. 32 which refers to the physical and mental examination of persons—regulate the condemnation proceeding. Hence, in order to determine finally the scope of the discovery of expert evidence in a case of condemnation, it is necessary to resort to the opinions which have been delivered as to the testimony and reports of expert witnesses. But first let us turn to the facts of this case.

■ On August 16, 1960, the Commonwealth filed a condemnation proceeding at the request of the Government of the Capital to acquire certain properties for the purpose of widening San Jorge Street, among which is found a parcel of 386.47 square meters belonging to defendant Edelmiro Martínez Rivera, and on which a concrete building is located, having an area of approximately 323 square feet. The summons was issued on November 25. Defendant's answer was filed on January 16, 1961, and it challenged the amount of $41,295 deposited as a just and reasonable compensation, it being alleged, on the contrary, that the value of the property was $100,000. Ten days later, the condemner served some

---

*answered*, he may present evidence as to the amount of the compensation to be paid for his property . . ." In general, see PAUL, *Condemnation Procedure Under Federal Rule 71A*, 43 Iowa L. Rev. 231 (1958); 7 MOORE, Federal Practice 2701 *et seq.* (2d ed.).

interrogatories to the defendant.[2] Together with his answer to the interrogatories defendant in turn served some interrogatories [3] on the plaintiff, and among others it required plaintiff to state "whether you have in your possession a written report of this property's appraisal and if so, attach to your answer a faithful copy thereof or state where it may be examined and copied." The answer was: "Our expert submitted to us a written report of appraisal; it may not be copied nor examined. The plaintiff is not bound to furnish a copy of the appraisal report to the defendant."

---

[2] The following information was requested in the interrogatories:

"1. Defendant please state the name of the appraiser or appraisers who made the appraisal of your property.

"2. State the name and address of all the witnesses and experts whom you intend to use in this case.

"3. On what does the defendant base the conclusion of value which appears in the second paragraph of the answer filed in this case.

"4. Which is the best use of the condemned property in this case and what other possible uses, if any, were taken into consideration to reach the conclusion of value, which appears in the answer.

"5. If similar sales were employed, specify (sic) stating the area, location, prices, persons involved in the transaction and the document in which it was made with its registration number.

"6. State the manner of payment of the expert services whether by a fixed price or on a percentage basis.

"7. State whether the property is occupied, by whom, from what date, if rent is paid what is the monthly rate."

[3] The interrogatory submitted by defendant read as follows:

"1. State whether the lot and building condemned defendant were appraised separately and if so, specify the proceeds from each item.

"2. State the value per square meter assigned to the lot.

"3. State the value per square feet of construction assigned to the structure.

"4. State the area of construction appraised.

"5. If the appraisal was made on the basis of an inspection, state who carried out such inspection and when.

"6. State whether plans or designs were prepared for the appraisal and whether specifications were made, giving the name of whomever made them and where they may be examined and copied by defendant.

"7. State the factors which plaintiff took into consideration to reach the value assigned to the property.

"8. State whether you have in your possession a written report of this property's appraisal and if so, attach to your answer a faithful copy thereof or state where it may be examined and copied.

"9. State which documentary evidence you intend to present in the

Defendant immediately requested that an order be issued to examine the report in question, but it was flatly denied. A reconsideration was sought but was dismissed by a lengthy order,[4] on the ground that: (a) the primary purpose of the discovery of evidence is to obtain information of facts which permit the plaintiff to be prepared for the trial, and the report of the experts contain their opinion and do not present facts or data which might help the preparation indicated; (b) defendant would be granted an undue advantage, if it is considered that the expert's fees have been paid by the party who intends to present him on the day of the trial; (c) the situation is similar to that where information which is obtained by a lawyer in the preparation of the client's case, undoubtedly referring to the ruling in *Hickman* v. *Taylor*, 329 U.S. 495 (1947); (d) it could cause confusion and delay, as pointed out in *Lewis* v. *United Airlines*, 32 F. Supp. 21, 33 (Pa. 1940). On May 8 defendant filed a motion addressed to the court [5] to be permitted to take the deposition of the expert Felipe Nazario, through oral examination, "for the purpose of discovering facts" which was denied because "what defendant seeks to obtain through dep-

---

case and identify it indicating, in case of public documents, the number of the deeds, dates thereof, name of the notary before whom they were executed, and the volume and page number in the Registry of Property.

"10. State the name and address of the witnesses and expert appraisers whom you intend to employ at the hearing of the present case.

"11. State whether upon making the appraisal of defendant's property the various purposes for which same could be destined were taken into consideration and state the purposes specifically considered and taken into consideration."

[4] In the exercise of our discretion we denied certiorari to review this decision, *Edelmiro Martínez Rivera* v. *Superior Court, Eminent Domain Section*, Cert. No. 2834, decided on April 28, 1961.

[5] The court's intervention was not necessary in view of the fact that it concerned a deposition at the request of the defendant after the action had begun. Rule 23.1, 32 L.P.R.A. p. 107 (Supp. 1960). Respecting the notice of interrogatories without the court's consent, see Rule 30, 32 L.P.R.A. p. 117 (Supp. 1960) and *cf. Rodríguez* v. *District Court*, 67 P.R.R. 677 (1947), decided under the previous Rule 33, 32 L.P.R.A., App. p. 622.

osition is what was denied previously" and the reasons stated in the order denying the inspection of the report were reiterated. To review this denial we issued the writ of certiorari.

The position of the Court in relation to the proceedings for the discovery of evidence prior to the trial, which should serve as a guide to find the adequate solution when dealing with a case of eminent domain, was set forth in general terms in *Sierra, Sec. of Labor* v. *Superior Court*, 81 P.R.R. 540 (1959),[6] with the following words (at p. 546):

[6] In *Sierra, Sec. of Labor* v. *Superior Court*, 81 P.R.R. 540 (1959) we decided that since the written interrogatories to the parties before the trial facilitate a speedy and just disposal of the lawsuits, they are not incompatible with the purpose of speeding the handling and resolution of the lawsuits filed by authority of Act No. 10 of 1917, 32 L.P.R.A. § 3101 *et seq.*, which establishes the special procedure for claims for services rendered. The scope of this decision has been considerably limited by § 3 of Act No. 2 of October 17, 1961 (Sp. Sess. Laws, p. 447), which provides in part that:

"In all cases prosecuted hereunder, the Rules of Civil Procedure shall govern insofar as they are not in conflict with the specific provisions of this act or with the summary nature of the procedure hereby established; provided, in relation with the pre-trial means of disclosure authorized by the Rules of Civil Procedure, that the defendant may not use them to obtain information which must appear in the records, payrolls, wage lists and other records which the employers are bound to keep under the provisions of the Minimum Wage Act and the regulations promulgated thereunder, except any testimony given or document submitted by the complainant in any judicial action; and that neither party may submit more than one interrogatory or deposition, nor shall a party take a deposition from the other after having submitted an interrogatory thereto, nor submit the other party to an interrogatory after having taken a deposition therefrom, except under exceptional circumstances which, in the judgment of the Court, justify the granting of another interrogatory or another deposition. The taking of depositions from the witnesses shall not be permitted without authorization of the court, after ascertaining the necessity of using said procedure.

"The information obtained by the Secretary of Labor or his duly authorized agents in the course of the investigations made in the exercise of the powers granted in the Minimum Wage Act and in the organic act of the Department of Labor, shall be of a privileged and confidential character and may only be disclosed by authorization of the Secretary of Labor."

"Experience shows that a liberal system of pretrial deposition-discovery facilitates the prosecution of suits and avoids inconveniences, surprises, and injustices that arise when the parties ignore until the day of the trial the questions and facts which truly constitute the object of the litigation. As it is well known, in the modern civil procedure it is accepted that the pleadings have only one mission: to show in a general way which are the claims and defenses of the parties. It is necessary to resort to the proceedings of discovery of evidence and taking of depositions prior to the trial in order to determine exactly which are the real issues in controversy and clarify which are the facts to be proved at the trial. It is not surprising then that all matters, facts or questions relevant to the litigation be considered within the scope of discovery, unless dealing with privileged matter."

As frequently happens, the opinions of the federal courts and of the different states do not offer a specific solution to the problem of the discovery of expert evidence before the trial. There are courts which absolutely deny it on the grounds (1) that expert evidence is evidence of opinion and does not refer to specific facts subject to discovery, *Zenith Radio Corporation* v. *Radio Corporation of America*, 121 F. Supp. 792 (Del. 1954); (2) that the information or the facts on which expert opinion is based are equally accessible to both parties, *United States* v. *48 Jars, more or less, etc.*, 23 F.R.D. 192 (1958); *United States* v. *7,534.04 Acres of Land*, 18 F.R.D. 146 (1952); (3) that it turns out to be unreasonable to the party which has incurred an expense for the payment of the expert's fees, *Leding* v. *United States Rubber Co.*, 23 F.R.D. 220 (1959); and (4) that expert opinion constitutes part of the work of preparation by the lawyer for the trial, and therefore, it is a matter of privileged information. See *Recent Trends in Use of Discovery: Hickman* v. *Taylor and Trends since 1947*, 16 N.A.C.A.L.J. 412–415 (1955).[7] Other courts have not followed a strict and in-

---

[7] While the *Hickman* case was pending before the Supreme Court of the United States, the Advisory Committee of the Rules of Civil Pro-

flexible norm, and have permitted, under specific circumstances, the discovery of expert evidence in some of the forms authorized by the rules. In general, it has been said that it should be considered whether the intended discovery substantially serves the purpose of clarifying the facts or limiting the questions in controversy, *United States* v. *Renault, Inc.,* 27 F.R.D. 23, 29 (1960); *American Oil Co.* v. *Pennsylvania Petroleum Products Co.,* 23 F.R.D. 680 (1959); that the existence of "good cause" should be shown, *United Air Lines, Inc.* v. *United States,* 26 F.R.D. 213 (1960) or of a special necessity, *E. I. DuPont De Nemours & Co.* v. *Phillips Petroleum Co.,* 24 F.R.D. 416 (1959) or that the denial to permit it will cause undue damages, *Safeway Stores, Inc.* v. *Reynolds,* 176 F.2d 476 (1949). In general, see 4 MOORE, *op. cit.* at pp. 1152–1159, § 26.24; 2A BARRON AND HOLTZOFF, Federal Practice and Procedure 153–159, § 652.5; 7 Cyclopedia of Federal Procedure 378 and 464, § § 25.347 and 25.456 (3d ed.); NISSEN, *Should Experts' Reports be Exempt From or Subject to Discovery?,* U. Ill. L.F. at p. 860 (1959); 48 Geo. L.J. 486 *et seq.* (1959); 7 Vand. L. Rev. 582 (1954); 50 Cal. L. Rev. 1026, 1035 *et seq.* (1950); 70 A.L.R.2d 780 (1960). Specifically, the subject has been considered in the following cases of condemnation: *Shell* v. *State Road Department,* 135 So. 2d 859 (Fla. 1961); *United States* v. *62.50 Acres of Land, etc.,* 23 F.R.D. 287 (1959); *United States* v. *6.82 Acres, etc.,* 18 F.R.D. 195 (1955); *United States* v. *7,534.04 Acres of Land,* 18 F.R.D. 146 (1955); *United States* v. *Certain Acres, etc.,* 18 F.R.D. 98 (1955) *Hickey* v. *United States,* 18 F.R.D. 88 (1955); *United States* v. *Certain Parcels, etc.,* 15 F.R.D. 224 (1954); *United States* v. *50.34 Acres of Land,* 13 F.R.D. 19 (1952).

---

cedure submitted an amendment which specifically protected from discovery any writing which contained the conclusions of an expert. In spite of the fact that said Court adopted all the other amendments proposed by the Committee, this one was not approved. 4 MOORE, *op. cit.* at pp. 2006–2007.

 In order to formulate our rule on this particular we should start from the basic premise that the government should be treated as any other litigant in the application of the rules of discovery, *United States* v. *Procter and Gamble Co.*, 356 U.S. 677, 681 (1958) ; *United States* v. *Carter Products, Inc.*, 27 F.R.D. 243 (1961) ; *Shenker* v. *United States*, 25 F.R.D. 96 (1960) ; *Government Immunity from Discovery*, 50 Yale L.J. 1451 (1950). As we have previously indicated the procedure of eminent domain partakes of a special nature. Among other things, even if the State files the suit, the burden of the evidence to establish just compensation corresponds to the defendant, *People* v. *García*, 66 P.R.R. 478 (1946), who is taken to the litigation involuntarily and who, therefore, has no previous preparation to face the allegations of the case. It is undeniable that the result of these litigations, in what respects the fixing of the final compensation, depends mostly on expert testimony, which makes it necessary that the parties be aware of such testimony sufficiently in advance to be able to prepare a counter-interrogatory which is adequate and limited to the specific points in controversy, thus affording a faster and more economical proceeding. Furthermore, it can not be ignored that it is not the case of an ordinary witness, but of a person who by reason of the specialized nature of his knowledge, is in an advantageous position. The analysis and the study of an expert's testimony requires time and effort, and hardly can that professional obligation be fulfilled if it is necessary to wait until the instance of the trial to learn in detail the contents of the expert opinion. The mission to challenge this type of testimony cannot be left to the hazard of improvisation. It should not be forgotten also that this limitation does not exist in respect to witnesses of the facts, whose testimony does not ordinarily have the weight recognized to the superior knowledge of the experts. Another factor of weight is the probability that a rule, which does not exclude

automatically the discovery of expert evidence, could contribute to develop a more objective view on the part of the expert and could eliminate to a large extent the spirit of solidarity and devotion to the cause of the client. Although we recognize that it could in some way turn out to be unreasonable for the State which has paid the expert's fees, it should be kept in mind that it is a litigant who has better means of investigation and economic means, and that in any event, the initial estimate is always indispensable to commence the lawsuit. *Cf. Shell* v. *State Road Department*, 135 So. 2d 859 (Fla. 1961). Finally, there is no doubt that restrictive interpretation in some federal jurisdictions was due to the fact that the rule was developed in relation to actions for violation of patents, trademarks, commercial secrets and it was transferred to the condemnation proceedings, but locally we did not anticipate that a position more favorable to an ample discovery could create problems, for our legislation in such matters is very limited, or practically nil, with the possible exception of lawsuits over trademarks.

Now, the fact that we adopt the norm which permits the discovery of expert evidence in cases of condemnation [8] does not mean that the right of the litigants is unlimited. In addition to the objections permitted when it concerns a witness of the facts,[9] we wish to indicate that the procedure may in nowise be utilized to investigate the mental process employed by the expert in his evaluation of the different factors considered to form his opinion and reach his conclusions as to the just compensation, nor the weight which he has specifically given to each factor. Neither should it be permitted that the taking of depositions be used to ask the expert hypothetical questions as to which there is no proof or as to which sufficient time has not been granted

---

[8] This position is in agreement with Rules 405 to 408 of the *proposed* Rules of Evidence.

[9] See Rules 27.2, 32 L.P.R.A., p. 113 and 30 *in fine*, 32 L.P.R.A., p. 117 (App. 1960).

to be prepared. *Cf. Beirne* v. *Fitch Sanitarium*, 20 F.R.D. 93 (1957). In general terms, investigation may embrace the following points: method used for the evaluation, if market value, capitalization of rents, reproduction cost, or any other acceptable one under the circumstances of the case; characteristics of the condemned property which have been considered; relation of the evaluation factors employed; in the event that sales of similar property have been considered, a specification of such sales and the reference to the public document by virtue of which the transaction was effected, and any other data related thereto; plans, reports and other documents employed in relation with the appraisal, and opinions of the expert. The court may also impose whatever conditions it deems just and reasonable to protect the parties adequately. The party requiring the discovery shall in turn place its expert report at the disposal of the other party, or if it did not have available an expert's services at the moment, it shall be ordered to so inform the other party with sufficient time prior to the trial so that if the latter so wishes it may request the inspection of any report given or it may proceed to take his deposition. The court, within its power to avoid oppression or inconveniences to the parties, may limit the number of interrogatories, and if copy or inspection of the expert's report has been permitted, it may also—in the absence of just cause—suspend the taking of his deposition. Of course, the scope of the discovery depends on the facts of each case in particular, *Frank C. Sparks Co.* v. *Huber Baking Co.*, 114 A.2d 657 (Del. 1955), and respecting what has not been provided in this opinion, it should be left to the sound discretion of the trial court which should be guided by the so oft-repeated purpose of securing a fair and speedy and economical trial without advantages for either party. It should be remembered that the fixing of the just compensation requires a skillful synchronization of several factors, and in the last analysis, a sound adjustment between the owners' right and

the community's needs. *Commonwealth* v. *Fonalledas*, 84 P.R.R. 552 (1962).

We have examined the interrogatories served on the parties by each other in the present proceeding, and which are copied in footnotes 2 and 3, *ante.* An honest and straightforward answer thereto [10] would help to limit the controversy and furnish the litigants with the necessary information for an adequate preparation for the trial. If respondent had been authorized to copy or to inspect the written report of the expert appraiser employed by the condemnor, with the limitations to which we have previously referred above, said expert's deposition would have been unnecessary. In view of the trial court's refusal to permit it, we feel constrained to set aside the order of June 7, 1961, and to remand the case for further proceedings not inconsistent with the norms set forth in this opinion.

---

[10] Defendant's answer to plaintiff's interrogatories reveals that respecting expert evidence "it would determine whether it was necessary at the time of the trial." In harmony with what we have suggested for an orderly and even discovery between the parties, the court should adopt the necessary measures to enable the State, sufficiently in advance and if it so wishes, to examine the report or take the deposition of the expert whom defendant intends to use.