WIGGINTON, Judge.
Appellants, who were defendants in an eminent domain proceeding brought by the State Road Department, have appealed! from a final judgment based upon a jury’s verdict awarding compensation for a seventeen foot strip of land acquired for state road purposes. The principal contention of appellants is that the trial court erred in denying their motion for new trial.
Title to the parcel of land in question was taken at the outset of the proceeding under the declaartion of taking procedure provided for by the statutes of this state.[1] The record before this court does not contain the declaration of taking setting forth the estimated value of property sought to be acquired,[2] nor does it contain any proceedings with respect to- the appointment of court appraisers, the report as to their appraised value of the property, or the testimony which may have been taken thereon as required by the statute.[3] The order of taking on which appellants rely awards possession of the property to the Road Department upon payment into the .registry of the court a sum of $16,891.50, and recites that such *716 deposit of money will fully secure and compensate the owners as may be determined by the final judgment.
Because of the absence from this record of the declaration of taking the value of appellants’ land as estimated by the Road Department is not revealed, nor are we able to ascertain from the record the appraised value of appellants’ property as found by the court appointed appraisers. The statute, however, requires that if the petitioner is acquiring right of way for the state highway system, it shall be required to deposit such sum as the court shall determine will fully secure and compensate the persons lawfully entitled to compensation, which deposit shall be not less than 100% of the value as fixed by the court appointed appraisers. The amount which was required to be deposited in the registry of the court as set forth in the order of taking represented the value ascertained by the trial judge as being sufficient to meet the requirements of the statute, and does not necessarily reflect either the value of the property as estimated by the petitioner in its declaration of taking, nor the value as found by the court appointed appraiser.
The value of appellants’ property testified to at the trial by the witnesses appearing on behalf of the Department was the sum of $13,335.00. The value testified to by appellants’ witnesses was $49,125.00. The just compensation awarded by the jury and incorporated in its verdict was the sum of $14,335.00. The judgment appealed confirmed the jury’s verdict and awarded appellants judgment in the amount found by the jury to be the just compensation for the taking of their land in this proceeding.
Appellants’ principal contention is that the compensation awarded by the jury, being less than the amount fixed in the order of taking, conclusively demonstrates that the verdict is contrary to the manifest weight of the evidence and justice of the cause, requiring the verdict to be set aside and a new trial granted. They rely for reversal upon the decision rendered by the Supreme Court in the Bennett case.[4]
In Bennett the declaration of taking estimated the value of the parcels of land sought to be acquired to be in the amounts stated therein. Between the date on which the declaration of taking was filed and the date of trial, it was discovered that the expert appraiser employed by the condem-nor had committed an error in arriving at the estimated value of the owner’s property. The error was occasioned by having been furnished improper maps which resulted in a miscalculation as to the amount of land remaining to the owner after the taking. The witnesses who testified on behalf of the condemnor at the trial gave their expert opinion as to the value of the land being condemned based upon proper maps and calculations which eliminated the original error reflected in the values set forth in the declaration of taking. The values testified to by the condemnor’s appraisers were necessarily less than the values reflected in the declaration of taking because the error committed by the original appraiser had been discovered and rectified. The jury awarded as just compensation a value in excess of the values placed on the property by the condemnor’s witnesses, but which was less than the erroneous estimates of value contained in the declaration of taking. The trial judge awarded a new trial on the declared ground that he was shocked by the verdict because it awarded sums of money less than the estimated value of the property as stated in the declaration of taking. On appeal to this court the order granting a new trial was reversed for the .reason that the verdict was within the range of the evidence adduced on trial as approved by the Supreme Court in Meyers,[5] and that the susceptibility of the trial judge to *717 emotional trauma was not a proper criterion for setting aside a verdict. It was our view that the validity of a jury verdict based upon competent and substantial evidence is no more dependent upon the tenderness or callousness of a trial judge’s sensitivity to shock than is the breadth of the chancellor’s discretion dependent upon the length of his foot. The Supreme Court granted review by certiorari of this court’s decision and rendered an opinion quashing our judgment and affirming the order of the trial judge granting a new trial. It was the 'Supreme Court’s view that the trial judge’s expression of shock at the size of the verdict should more properly be interpreted to mean that he found the verdict to be contrary to the manifest weight of the evidence and justice of the cause, and that this finding was the real basis for the order granting a new trial. Based upon its interpretation of the ground upon which the order was entered granting a new trial, the Supreme Court found that the trial judge had not abused his discretion under the principle announced in its former decision of Cloud v. Fallís.[6] In that decision the rule was pronounced that where a jury’s verdict is considered by the trial judge to be contrary to the manifest weight of the evidence and justice of the cause, it is not only his privilege but his duty to set the verdict aside and grant a new trial. In the exercise of his discretion he is not controlled by the fact that competent and substantial evidence appearing in the record supports the verdict. If in his judgment the verdict results in a miscarriage of justice, he is privileged to set it aside, and his discretion may not be disturbed on appeal. That is the crux of the Supreme Court’s holding in Bennett, and any conclusion that new or novel principles relating to the law of eminent domain were established by that opinion is in our judgment wholly unjustified.
Appellants argue that in eminent domain proceedings the condemning authority occupies a position which invariably gives it an unfair advantage over the landowner. They urge with considerable fervor that because of this advantage, the condemnor should be required by its declaration of taking to state in advance of the trial the minimum figure by which it wil be bound as the just compensation to which the condemnee will, in any event, be entitled.
It is difficult for us to follow the logic of appellants’ reasoning in light of the recent decision rendered by the Supreme Court in the Shell case,[7] which grants to defendants in eminent domain proceedings the right to require the condemning authority to divulge in advance of trial its attorney’s entire work product, including all appraisals and other data possessed by him relating to the land sought to be acquired, a right not yet held to be possessed by the condemnor. Be that as it may, appellants support the argument by what must be conceded to be justifiable reliance upon apparent inferences drawn from the emphasis placed by the Supreme Court upon the facts recited in the Bennett decision.
We are unable to subscribe to the rule of law contended for by appellants which would hold that a jury’s verdict rendered in an eminent domain proceeding, if within the scope of the evidence adduced on trial, must peremptorily be set aside if the amount awarded is less than the amount of estimated compensation set forth in the declaration of taking filed by the 'condemning authority. Such a rule could not be grounded upon the theory that the verdict is contrary to the manifest weight of the evidence adduced at the trial for the reason that the statute specifically provides that the declaration of taking, the amount of the deposit and the report of the ap *718 praisers appointed by the court, shall not be admissible in evidence in any cause, and shall not be exhibited to any jury empaneled for the purpose of assessing the value of any land in condemnation.[8] How then can it be contended with logic or reason that a verdict in eminent domain proceedings should be set aside under the manifest weight of the evidence rule solely because it is contrary, not to the evidence adduced on trial, but to estimates of value made prior to trial which are not admissible in evidence and which are prohibited by law from being divulged to the jury trying the case.
There are other compelling reasons why the rule advocated by appellants is unsound. Our Constitution provides that private property shall not be taken without just compensation.[9] The statute of this state relating to eminent domain provides that the just compensation to be paid for the taking of private property for public use shall be fixed by a jury of twelve men.[10] Thus it is seen that under both our Constitution and statutes the just compensation to be paid for the taking of private property for public use may be fixed only by the jury. To hold that the estimated value of the property sought to be condemned as set forth in the declaration of taking filed by the acquiring authority is the minimum compensation to which an owner is entitled, and a jury’s verdict fixing compensation at a sum less than that stated in the declaration of taking is unauthorized and must be set aside, is tantamount to holding that the minimum just compensation to be paid an owner for the taking of his land is the amount fixed by the condemnor, and not by the jury. Only the jury can fix the compensation to be awarded, and when so fixed, it is both the minimum and maximum to which the owner is entitled. It would pervert both the Constitution and statutes of this state if it were held that the condemning authority had the right to fix the minimum compensation to be paid for private property appropriated for public use. What is said with respect to the estimated values set forth in the declaration of taking applies with greater force to the amount of deposit required to be paid by the con-demnor into the registry of the court as fixed in the order of taking. The amount of such deposit is determined by the trial judge in the exercise of his sound discretion. It does not necessarily bear an exact relationship either to the estimated values stated in the declaration of taking or to the value of the land as fixed by the court appointed appraisers.
Cogent reasons of public policy also militate against the rule of law advocated by appellants. Experience has shown that it is not at all uncommon for the appraisers charged with the duty of estimating the value of the property to be acquired by eminent domain to commit an error in arriving at an estimate of value. Such errors customarily occur as a result of incorrect information, or through inadvertence, oversight or omission of the factors which may lawfully be considered in arriving at the true value of property. When, such a mistake results in an erroneous estimate of value which is relied upon by the condemning authority in the preparation of its declaration of taking, the con-demnor should not be penalized by a rule of law which would prohibit it, upon the. discovery of such error, to rectify it in the preparation of the evidence which it will present at the trial regarding the value of the property sought to be acquired. Any such principle of law would be not only contrary to every concept of fairness and justice, but would unduly penalize public bodies whose only resource for the pay *719 ment of eminent domain awards is the taxes paid by all citizens who have a direct interest in the cost of the improvements which will utilize the property being condemned.
Appellants conclude with the assertion that the only difference between this and the Bennett case is that the judge who presided at this trial was not shocked by the jury’s verdict, while the judge who tried Bennett suffered an opposite reaction. Appellants argue that they should not be deprived of a new trial merely because their judge was harder to shock than was the judge in Bennett. Alhough such contention is justified in light of inferences which may be drawn from the Bennett decision, we cannot agree that the controlling points of difference between the two cases is as conceived by appellants. The critical distinction is that in Bennett a new trial was granted, while here the new trial was denied.
Appellants’ dilemma demonstrates the fact that the legal profession now stands upon the threshold of a new frontier. It is no longer enough for a lawyer to be skilled only in the law, but he must also be knowledgeable in the disciplines of psychology and drama. He must be able to ascertain with accuracy the degree to which his trial judge is susceptible to emotional shock. With this as a guide, he must then be sufficiently competent to so dramatize the presentation of his case on trial that an unfavorable verdict will shock the conscience of the judge to such an extent that a new trial will be ordered. An order based upon this ground is impervious to attack. It may no longer be questioned on appeal under the rule pronounced in Bennett as extended and elaborated upon in the Supreme Court’s more recent decision rendered in Russo v. Clark, Fla.Sup., - So.2d -.
We have carefully considered the remaining points on appeal as supported by the assignments of error, but fail to find where appellant has clearly demonstrated error. The judgment appealed is accordingly affirmed.
CARROLL,' DONALD K., Chief Judge, and STURGIS, J., concur.

. F.S. Oh. 74, F.S.A.

. F.S. Sec. 74.01. F.S.A

.F.S. Sec. 74.03, F.S.A

. Bennett et al. v. Jacksonville Expressway Authority, (Fla.1961) 131 So.2d 740.

. Meyers et al. v. City of Daytona Beach, (1947) 158 Fla. 859, 30 So.2d 354.

. Cloud v. Fallis, (Fla.1959) 110 So.2d 669.

. Shell v. State Road Department, (Fla.1962) 135 So.2d 857.

. F.S. Sec. 74.09, F.S.A.

. Florida Constitution, Declaration of Rights, Sec. 12, F.S.A.

. F.S. Sec. 73.10, F.S.A.