PIERCE, Judge.
In this case G. A. Carlson and Grace A. Carlson, his wife, appeal to this Court from a final judgment entered against them as defendants in the Court below and in favor of Pinellas County, a political subdivision of the State of Florida, plaintiff below, in a condemnation action.
The County brought eminent domain proceedings against the Carlsons seeking to acquire their land for parking purposes. The Carlsons filed their answer praying for an assessment of compensation by a jury, and on August 17, 1967, an order of taking was entered.
On December 22, 1967, the County filed a notice of taking the deposition of one A. B. Fogarty, “for the purpose of discovery or evidence or both”. On the same date, on praecipe of the County, subpoena duces tecum was issued directed to Fogarty, commanding him to appear and testify for the County at a specified time, date and place and to have with him and produce the following:
“Appraisals, Estimates of Value, and supporting information for same with respect to any appraisal made by him on the following described property within the past three years: [the real property sought to be condemned].”
On January 5, 1968, the Carlsons moved for a “protective order” in accordance with Rule 1.310 (b) FRCP, 30 F.S.A., seeking to prevent the taking of such deposition of Fogarty or production of the articles in question, pursuant to the subpoena. The grounds for such motion were in substance that the attorney for the Carlsons had consulted Fogarty in the latter’s professional capacity as an appraiser “in order to obtain technical information and expert opinion to assist him in the trial of this case; and any information which the said witness may possess or any opinion which he may have as to the value of the land herein sought to be taken constitutes the work product of the attorney for * * * [the Carlsons], and, is therefore, privileged and not within the scope of discovery proceedings”, adding that the Carlsons would “not utilize A. B. Fogarty as a witness at the trial of this cause and have not waived the work product privilege”.
After hearing on January 8, 1968, the Court entered order to the effect that, while the attorneys for the County could not examine Forgarty “as to any communication between him and the attorney for the [Carlsons]”, he could be examined by the County as to the “fact of his engagement to appraise the property” of the Carlsons in question and could “fully examine the said witness as to any and all other matters, including the content of his written ap *705 praisal of the said property, his expert opinion as to the value of said property and the factors on which such opinion is based”. His deposition followed.
At the trial Fogarty was called as a witness by the County, to which the Carl-sons objected. The Court overruled the objection, holding that Fogarty could be examined by the County within the delineations of his order of January 8th, except with the further limitation that the County “cannot inquire of this witness concerning his employment by the” Carlsons, thus in effect modifying his previous order to the extent of precluding the County from inquiring as to the “fact of his engagement [by the Carlsons] to appraise the property”. The County thereupon examined him at length as to his appraisal, his opinion of the value of the property, and the basis for his opinion. He gave as his opinion as to the fair market value of the property the sum of $99,600.00. The jury awarded the Carlsons $102,500.00, for which amount final judgment was entered.
Motion for new trial on behalf of the Carlsons being denied, they have appealed the judgment to this Court, and assign as error the action of the Court in allowing Fogarty to be deposed, and later examined by the County at the trial, over objections of the Carlsons. We agree with the Carlsons, but are of the opinion that it is a proper case to be certified to the Supreme Court as presenting a “question * * * of great public interest”. Article V, § 4, Constitution of Florida.
The question involved is of first impression in Florida, and so far as we can ascertain, in the nation. There is no case on the precise point but the case coming closest to the subject matter is probably that of Shell v. State Road Department, Fla.1961, 135 So.2d 857, which is factually in somewhat “reverse English”. There the State Road Department sought by eminent domain to condemn certain lands for public highway purposes and, after an order of taking was entered, the landowners, one Shell and others, filed motion in the trial Court pursuant to Rule 1.28 FRCP, asking that the Court require the condemnor, State Road Department, “to produce for inspection, copying or photographing, all surveys, drawings, maps, plats, road construction statistics, specifications, appraisals, appraisers, work sheets and all other documents in the hands of the respondent [Road Department] affecting the valuation of the petitioner’s lands”. The trial Court granted the motion to produce and the State Road Department thereupon petitioned this 2nd District Court by certiorari to review the interlocutory order requiring such production. This Court quashed the Circuit Court’s order aforesaid, holding that the information sought by the landowners was a “work product” (122 So.2d 215). The condemnees then cer-tioraried to the Supreme Court which, by a divided Court, quashed the judgment of this 2nd District Court with directions that the Circuit Court order be reinstated.
The effect of the majority opinion of the Supreme Court was that a landowner in eminent domain proceedings has the right under the discovery rules to require production by the condemnor governmental agency of the information, papers and data encompassed in the Circuit Court order before quoted, notwithstanding the “work product” immunity ordinarily protecting such information and data under the oft-cited leading U. S. Supreme Court case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, and the subsequent Federal decisions thereunder, holding that “the opinions of expert witnesses and the material prepared and gathered by them in preparation for trial” are not subject to compulsory production by discovery. We quote from Shell:
“The question of whether or not the opinions and reports of expert witnesses retained by a party preparatory to litigation constitute a work product has not been specifically decided in this state.
*706 * * * * * *
“A review of the applicable Florida authorities cited above on the subject of work product, however, indicates that in an ordinary case data compiled or prepared by experts in preparation for trial would constitute a part of the work product of a party or his agents. Professor Moore indicates in his treatise that the denial of discovery of such data is usually founded on the general basis ■of unfairness to the person who engaged the expert. 4 Moore’s Federal Practice, Section 26.24.
“Nevertheless, conceding that in private litigation the reports and opinions of experts should be considered a ‘work product’ exempt from compulsory discovery, we are convinced that the ‘work product’ immunity should not extend to the type of information sought in this eminent domain proceeding. We realize that the rule pronounced herein with reference to condemnation proceedings is diametrically opposite to the prevailing rule in ordinary litigation. However we are convinced that there is no inconsistency because both rules are based upon sound public policy when the sphere in which each- operates is properly analyzed.”
So it would seem from the foregoing quotation from Shell that our Supreme Court has opened the door to discovery of the work product of the opposing litigant in eminent domain cases, without distinction as to whether the moving party is the condemnor or the condemnee. However, the Supreme Court went further in Shell and cast considerable doubt upon whether it was intended that the liberal rule there announced would be equally available to the condemning authority in requiring the involuntary production of the “work product” of the landowner’s attorneys and expert witnesses, the same as the opinion now makes available to the landowner. We quote further from Shell:
“It must be borne in mind that in a condemnation proceeding the property of the land owner is subject to taking by the condemnor without the owner’s consent. The condemnee is a party through no fault or volition of his own. Our Declaration of Rights, Section 12, Constitution of the State of Florida, F.S.A., makes it incumbent upon the condemnor to award ‘just’ compensation for the taking. In view of this constitutional mandate, the awarding of compensation which is ‘just’ should be the care of the condemning authority as well as that of the party whose land is being taken.
Unlike litigation between private parties condemnation by any governmental authority should not be a matter of ‘dog eat dog’ or ‘win at any cost’. Such attitude and procedure would be decidedly unfair to the property owner. He would be at a disadvantage in every instance for the reason that the government has unlimited resources created by its inexhaustible power of taxation. Moreover it should be remembered that the condemnee is himself a taxpayer and as such contributes to the government’s ‘unlimited resources’.
Considering the nature of the condemnation proceedings, we hold that there is no violation of the essential requirements of law in compelling the State Road Department to produce in advance of trial information bearing on the issue of ‘just’ compensation.
‡ H1 H* ‡ He
We do not believe this procedure will place the State Road Department at a disadvantage in trying its case. We can envisage no ‘unfairness’ to this governmental agency. If the governmental unit or agency is seeking to effectuate the ‘summum bonum’, as it should in every condemnation suit, there is no justification for cutting corners or being secretive to the possible detriment of the individual land owner whose property *707 is being taken from him against his will.” (Emphasis supplied).
The 1st District Court in Bainbridge v. State Road Department, Fla.App. 1962, 139 So.2d 714, held that the Supreme Court’s opinion in Shell—
“ * * * grants to defendants in eminent domain proceedings the right to require the condemning authority to divulge in advance of trial its attorney’s entire work product, including all appraisals and other data possessed by him relating to the land sought to be acquired, a right not yet held to he possessed by the condemnor." (Emphasis supplied).
Considering all the foregoing, we are persuaded that the reasonable rationale of the majority Shell opinion is that the Supreme Court, in recognition of the contrasting “position” of the litigating parties, meant to except only the “governmental authority” from the immunity protection of its work product, in contrast to the immunity protection of the private landowner condemnee. We realize it would have been obiter for the Supreme Court to have extended the exception to include the condemnee’s work product, but we believe the majority would have made it clear if it was so intended.
On this premise, it is our opinion that the trial Court in the case sub judice was in error in requiring the Carlsons to divulge the work product of their expert witness Fogarty by mandatory process. The judgment appealed is therefore reversed with directions that further proceedings be had in the lower Court consistent with this opinion.
LILES, A. C. J., concurs.
MANN, J., dissents.