STATE, *ex rel.* ARTHUR G. CUMMER v. J. E. PACE, as City Auditor of the City of Jacksonville; FRED M. VALZ, as Chairman of the City Commission of the City of Jacksonville, and as a City Commissioner of the City of Jacksonville, Florida; ST. ELMO ACOSTA, ERNEST E. ANDERS, THOMAS C. IMESON and P. M. ULSCH, as City Commissioners of the City of Jacksonville.

159 So. 679.
Opinion Filed February 27, 1935.

George M. Powell, for Relator;

Austin Miller and Gov Hutchinson, for Respondents.

DAVIS, J.—This is an original proceeding in mandamus brought on the relation of Arthur G. Cummer, a citizen of the City of Jacksonville, for the purpose of coercing the respondents as officials of said City to observe the provisions of Section 490 C. G. L., 424 R. G. S., by permitting the said relator, Arthur G. Cummer, in person and by his authorized agent, Paul R. Smoak, to make inspections from time to time, during regular office hours, of any and all the municipal records and books of account of the City of Jacksonville, Florida, as they may desire to so inspect in accordance with the statute hereinbefore referred to.

The respondents have filed their return to the writ in which they have set up as a special defense in the nature of confession and avoidance the following facts, which they assert are sufficient to preclude and bar the award of a peremptory writ; that the relator, Arthur G. Cummer, is the President of Commodores Point Terminal Corporation, which corporation is engaged in a similar and competitive business to that carried on by the City of Jacksonville through its municipal docks and terminals which are being operated by said municipality in its proprietary capacity under the authority, terms and provisions of Chapter 6415,

Acts of 1912, Laws of Florida; that respondents have always permitted all citizens, including the relator, to have free access to the books and records of the City and have permitted any and all audits desired by them, except that part of the records of the City of Jacksonville relating to its municipal docks and terminals which relate to the nature, kind, quantity, destination, consignee or routing of property tendered or delivered to it for interstate transportation, the disclosure of which information respondents assert would be violative of paragraphs XI and XII of the Interstate Commerce Act of the United States. 49 U. S. C. A., Section 15, pars. 11 and 12 (pages 437 and 438).

The paragraphs and section of the Interstate Commerce Act so relied on read as follows:

"(11) *Disclosure or solicitation of information concerning shipments unlawful; exceptions.* It shall be unlawful for any common carrier subject to the provisions of this chapter, or any officer, agent, or employee of such common carrier, or for any other person or corporation lawfully authorized by such common carrier to receive information therefrom, knowingly to disclose to or permit to be acquired by any person or corporation other than the shipper or consignee, without the consent of such shipper or consignee, any information concerning the nature, kind, quantity, destination, consignee, or routing of any property tendered or delivered to such common carrier for interstate transportion, which information may be used to the detriment or prejudice of such shipper or consignee, or which may improperly disclose his business transactions to a competitor; and it shall also be unlawful for any person or corporation to solicit or knowingly receive any such information which may be so used; *Provided,* That nothing in this chapter shall be construed to prevent the giving of such information in

response to any legal process issued under the authority of any State or Federal court, or to any officer or agent of the Government of the United States, or of any State or Territory, in the exercise of his powers, or to any officer or other duly authorized person seeking such information for the prosecution of persons charged with or suspected of crime; or information given by a common carrier to another carrier or its duly authorized agent, for the purpose of adjusting mutual traffic accounts in the ordinary course of business of such carriers.

"(12) *Penalty for violation of preceding provisions.* Any person, corporation, or association violating any of the provisions of the next preceding paragraph of this section shall be deemed guilty of a misdemeanor, and for each offense, on conviction, shall pay to the United States a penalty of not more than $1,000.00."

It is further averred in defense against the commands of the alternative writ that relator's attempt to have the relief granted to him which is sought in this proceeding is not in good faith for the purpose of obtaining any legitimate information to which the relator may be entitled under the statutes of Florida upon which he relies, but is upon the contrary brought by the relator as a subterfuge in order to obtain for Commodores Point Terminal Corporation, in which corporation relator has an interest, information the disclosure of which would be a direct violation of the Interstate Commerce Act of the United States before mentioned, because it would reveal to the Commodores Point Terminal Corporation through relator, information relative to the customers of the Municipal Dock & Terminals of the City of Jacksonville to which information neither relator nor said company is entitled under the law.

It is further averred that relator is prosecuting this pro-

*ceeding under the statutes of Florida solely as a means of aiding the Commodores Point Terminal Corporation to obtain evidence from the books of the City for its use in certain litigation which has been instituted against the City of Jacksonville in the Federal courts by Commodores Point Terminal Corporation as complainant.

The sufficiency of those paragraphs of the respondents' return which set up the special defense hereinbefore recited have been challenged by demurrers interposed by relator thereto, and the cause is now before this Court for a ruling upon the sufficiency of paragraphs IX, X, XI and XII of the return as against the relator's demurrer.

The fact that the City of Jacksonville owns and operates as a public utility its municipal docks and terminals in a proprietary, instead of a governmental capacity, as provided by Chapter 6415, Acts of 1912, Laws of Florida, constitutes no sufficient cause to deny the relator, as a citizen of Jacksonville, his right under Section 490 C. G. L., to examine the books and records of the City of Jacksonville, including those relating to and covering the details of its operation of its municipal docks and terminals. Section 490 C. G. L. is all inclusive and sweeping in its provisions and there is nothing in that statute to support the contention that because particular records relate to the proprietary affairs of the municipality, that they are not subject to the privilege that the statute accords without reservation to "all" municipal records. See Barrickman v. Lyman, 154 Ky. 630, 157 S. W. Rep. 924, 155 Ky. 710, 160 S. W. Rep. 267; Mushet v. Dept. of Public Service of Los Angeles, 35 Cal. App. 630, 170 Pac. Rep. 653; 38 Corpus Juris 740; 2 McQuillan Municipal Corporations (Second Edition) par. 660, at pages 513-514.

The foregoing statement is supported by what was said

by Mr. Justice ELLIS in our recent opinions in the case of State, *ex rel.* Davidson v. Couch, 115 Fla. 115, 155 Sou. Rep. 153, 115 Fla. 115, 156 Sou. Rep. 116 Fla. 120, 158 Sou. Rep. 103. As was observed in the case just cited the language of the statute (Section 490 C. G. L.) is plain, and there being no ambiguity in it, there is no occasion for the interpretation of words, nor construction of phrases or sentences. The statute applies specifically to "all" municipal records, and where the Legislature has preserved no exception to the provisions of the statute, the courts are without the legal sanction to raise such exceptions by implication, the policy of State statutes being a matter for the Legislature and not for the judiciary to determine.

This brings us to the proposition whether or not the Federal Statute (49 U. S. C. A., Section 15, pars. 11 and 12; 36 Statutes U. S. 539, 551, 553, approved June 18, 1910) relied upon by the respondents as a legal justification for their refusal to do that which the statute of Florida (Section 490 C. G. L., *supra*) requires them to do, is of legal efficacy to bar the award of a peremptory writ of mandamus to require the State statute to be obeyed by the respondents, as officials of the City of Jacksonville.

In State v. Seaboard Air Line Ry Co., 169 N. C. 295, 84 S. E. Rep. 283, it was held by the Supreme Court of North Carolina that a State statute might permissibly make any citizen of the State an authorized agent of the State for the purpose of inspecting the books and records of common carriers for information as to persons charged or suspected of crime, as permitted in the proviso to the Interstate Commerce Act provision (Sec. 15, pars 11 and 12, *supra*) above mentioned. On appeal the holding of the Supreme Court of the State of North Carolina was affirmed by the Supreme Court of the United States. See Seaboard

Air Line Ry. Co. v. State of North Carolina, 245 U. S. 298, 38 Sup. Ct. Rep. 96, 62 L. Ed. 299. In the latter decision it was held that the provisions of the Act to Regulate Commerce above mentioned were intended to apply to matters within the exclusive control of the Federal government.

The details of the management and operation of the municipal docks and terminals of Jacksonville are not within the exclusive control of the Federal government, but are within the control of the Legislature of the State of Florida which in the enactment of Section 490 C. G. L., *supra,* has extended to any citizen of Florida the unrestricted privilege of examination of the books and records of municipalities in order that such citizens may advise themselves concerning the operation and conduct of the public affairs which such municipalities are authorized to carry on.

While we do not go so far as to hold that shippers and consignees, as such, are to be deprived of the protection intended to be afforded to them by the terms of the Federal Act forbidding disclosures of information of the character thereby required to be kept confidential, merely because they have elected to avail themselves of a publicly operated dock and terminal facility owned by the city, instead of a private one owned by an ordinary common carrier, there is nothing in the return of the respondents to clearly demonstrate in issuable form that relator has any design to improperly delve into the business transactions of a shipper or consignee competitor of his, nor is there any allegation to the effect that relator is attempting to obtain from the books and records of the respondent City of Jacksonville any information that would, if obtained, be to the detriment of a shipper or consignee using the City's terminal facilities for the purpose of tendering or delivering property "for" interstate transportation by means of the City's docks and terminals.

The protection of the Federal statute was contrived for the particular benefit of the shippers and consignees of common carriers engaged in interstate commerce subject to the Interstate Commerce Act. There is nothing in its provisions to indicate that it was intended to so impinge upon the operation of State statutes allowing inspection of the public records of municipalities by citizens, as to completely deny to the citizen his statutory rights under the laws of this State, merely because some of the books and records sought to be examined might contain information of a character falling within the purview of the hereinbefore quoted Federal law relating to disclosure of information by carriers subject to the Interstate Commerce Act.

In connection with the foregoing, it must not be overlooked that par. 11 of Section 15 of the Interstate Commerce Act, as amended, makes it a criminal offense for any person or corporation to solicit or knowingly receive the forbidden information from a common carrier subject to the Interstate Commerce Act. Therefore, if relator should, without the consent of the affected shippers or consignees using the facilities of the respondent City of Jacksonville, solicit or knowingly receive information concerning the nature, kind, quantity, destination, consignee or routing of any property "tendered" or "delivered" to the Jacksonville municipal docks and terminals for interstate transportation, for the purpose of using such information to the detriment or prejudice of the consignees or shippers concerned, or for the purpose of improperly prying into the business affairs of a competitor shipper or consignee, the State statute affording to relator, as a citizen, the right to inspect the public records of the City of Jacksonville, including the books and records of its dock and terminal facilities for lawful purposes, would constitute no protection to him in a prose-

cution brought against him under the Federal law for unlawfully soliciting and receiving information to which he would not be entitled under the circumstances.

But be that as it may, the command of the alternative writ in this case is a general command to the respondents to permit relator to inspect the books and records of the City of Jacksonville pursuant to Section 490 C. G. L., *supra*. That the alternative writ makes a *prima facie* case is not refuted. Hence in the absence of a clear showing in the return in issuable form of facts sufficient to impute to relator a definite purpose to intrude himself into matters specifically forbidden to be disclosed by the City of Jacksonville in its capacity as a common carrier subject to the conditions and restraints of Section 15 of the Interstate Commerce Act, the relator is entitled to a peremptory writ.

The paragraphs of the return demurred to by relator fail to measure up to the legal test applicable to the sufficiency of a return in confession and avoidance of the right asserted by the alternative writ in that they fail to show in issuable form facts essential to make out a violation of the Federal statute upon which the respondents rely as the basis for their refusal to comply with the command of the writ on Federal grounds, nor do they show any defense against the command of the writ that can be availed of as a defense in bar or preclusion thereof under the terms of the State statute. The fact that the information may be sought by relator for use in litigation against the City is no justification, the Legislature having made no such exception in the statute. Barrickman v. Lyman, 154 Ky. 630, 157 S. W. Rep. 924, 160 S. W. Rep. 267, *supra*.

The demurrers to the return are severally sustained with leave to respondents to amend to conform to the holding of this opinion within fifteen days, relator to have ten days

thereafter to file appropriate pleadings to the return as amended, if advised so to do.

Let an order be entered accordingly.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.