242 So.2d 714 (1970)
PINELLAS COUNTY, a Political Subdivision of the State of Florida, Petitioner,
v.
G.A. CARLSON and Grace A. Carlson, His Wife, et al., Respondents.
No. 39094.
Supreme Court of Florida.
December 9, 1970.
Rehearing Denied January 25, 1971.
*715 Richard L. Stewart, County Atty., and Daniel N. Martin, Special Counsel, Clearwater, for petitioner.
Gerald R. Colen, St. Petersburg, for respondents.
Thomas C. Britton, County Atty., and Joan Elizabeth Odell, Asst. County Atty., for Dade County.
Howard Hadley, Chief Atty., and Geoffrey B. Dobson, Asst. Atty., Tallahassee, for State of Florida Dept. of Transportation, as amicus curiae.
ADKINS, Justice.
This cause is here on petition for writ of certiorari supported by certificate of the District Court of Appeal, Second District, that its decision reported in 227 So.2d 703 is one which involves a question of great public interest. See Fla. Const. art. V, § 4(2), F.S.A.
For clarity, the parties are referred to as in the lower court. Petitioner was the Plaintiff and Respondents were the Defendants.
These were eminent domain proceedings to acquire property to be used as parking facilities in connection with the St. Petersburg branch of the Pinellas County Courthouse. After filing a declaration of taking and securing an order of taking, Plaintiff filed a notice of taking the deposition of A.B. Fogarty, together with a praecipe for subpoena duces tecum upon deposition. The subpoena duces tecum required Fogarty to produce all information concerning the appraisal of Defendants' property.
Defendants filed a motion for a protective order which sought to prevent the taking of Fogarty's deposition or to exclude from the subjects of inquiry any matter relating to the contents of an appraisal made by the witness on behalf of Defendants' attorney or as to the witness' opinion as to the value of Defendants' property and as to any discussions with, or information given the witness by the attorney for Defendants relating to the value of the land or the attorney's preparation for trial of the cause. Fogarty was an appraiser engaged by Defendants' attorney.
After hearing argument on the motion, the Court entered an order allowing Plaintiff to examine Fogarty on all matters except any communication between him and the attorney for the Defendants.
Fogarty's deposition was taken and, at the trial, Plaintiff called Fogarty as its witness over the objection of the Defendants. Fogarty testified as to his appraisal of the property, his opinion of value and the basis of such opinion.
Subsequent to the trial, Defendants moved for a new trial, which motion was denied. The Defendants then entered their appeal to the District Court of Appeal, Second District. The District Court of Appeal held that the trial court was in error in requiring the Defendants to divulge the work product of their expert witness Fogarty by mandatory process and reversed the judgment of the trial court.
*716 Petitioners state the question before us as follows:
"Whether the `work product' rule is applicable in eminent domain proceedings in prohibiting the condemning authority from utilizing discovery procedures and inquiring of the expert witnesses employed by the condemnee concerning matters upon which their opinion of value is based."
As concepts of democracy have grown, greater emphasis has been placed on the rights of the citizen, among which has been the inalienable right or privilege of acquiring, possessing and protecting property. The power of eminent domain is circumscribed by the Constitution and statutes in order that cherished rights of the individual may be safeguarded. It is one of the most harsh proceedings known to the law. Peavy-Wilson Lumber Co., Inc. v. Brevard County, 159 Fla. 311, 31 So.2d 483, 172 A.L.R. 168 (1947).
"Value" in our condemnation statutes ordinarily means the amount which would be paid to a willing seller, not compelled to sell by a willing purchaser, not compelled to purchase, considering all uses to which the property is adapted and might reasonably be applied. Casey v. Florida Power Corp., 157 So.2d 168 (Fla.App.2nd, 1963). Under this rule the condemnee, an unwilling seller, is required to accept a value which some willing seller, not compelled to sell, would accept as the purchase price of the property. In protecting the property rights of our citizens, this Court should establish a procedure by which the condemnee, or victim, is given every opportunity to establish the true value of his property when confronted with the unlimited resources of the condemning authority.
In requiring the condemning authority to produce its appraisers' work sheets for inspection by the condemnee (Shell v. State Road Department, 135 So.2d 857 (Fla. 1962)), this Court said:
"We can envisage no `unfairness' to this governmental agency. If the governmental unit or agency is seeking to effectuate the `summon bonum', as it should in every condemnation suit, there is no justification for cutting corners or being secretive to the possible detriment of the individual land lowner whose property is being taken from him against his will." (p. 861)
It is inconsistent and illogical at this late date to say that the application of the rule in Shell, supra, does, in fact, result in unfairness to the condemning authority.
The discovery sought by the State of Florida in the case sub judice should have been denied, both because it is not consistent with the standards of fairness previously announced by this Court, and also because it violates the work product rule as it has been developed in Florida case law.
The question central to this case is whether a litigant may discover the work product information prepared for his adversary party and counsel by an expert, when that expert is not scheduled to be called as a trial witness. This question previously has been answered in the negative; Motor Union (Aviation) Orion Insurance Co. v. Levenson, 153 So.2d 852 (Fla.App.3rd 1963). In Motor Union, the District Court of Appeal held that discovery would not be permitted of a doctor's work product for adverse parties, where the doctor was not to be called at trial.
In the case sub judice, it is argued that a special rule prevails since the party who was subject to discovery was a condemnee. Reliance is placed on the Shell case. However, a careful reading of the Shell decision persuades that it was not the intention of this Court to destroy the work product rule regarding discovery in eminent domain cases. Rather, the Shell decision dealt with a special situation, the discovery of work product information prepared by the State in trial preparation. This Court stated:
"The concept of an attorney's work product being immune from discovery under *717 the Federal Rules of Civil Procedure was first recognized and announced by the U.S. Supreme Court in the oft-cited case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 393, 91 L.Ed. 451. In that case it was held that statements of witnesses secured by an attorney in advance of trial, while not strictly constituting matter privileged under the attorney-client relationship, should nevertheless be immune from discovery because such a procedure would be contrary to the public policy underlying the orderly prosecution and defense of legal claims. * * *
"The principle established in Hickman v. Taylor, supra, holding the work product immune from discovery procedures has been recognized and accepted in a number of cases in this state. See Atlantic Coastline Railroad Company v. Allen, Fla., 40 So.2d 115; Miami Transit Company v. Hurns, Fla., 46 So.2d 390; McGee v. Cohen, Fla., 57 So.2d 658; Seaboard Airline Railway Company v. Timmons, Fla., 61 So.2d 426; 10 Fla. Jur., Discovery, etc., Section 6; 7 Fla. Law and Practice, Depositions and Discovery, Section 25.
"* * *
"A review of the applicable Florida authorities cited above on the subject of work product, however, indicates that in an ordinary case data compiled or prepared by experts in preparation for trial would constitute a part of the work product of a party or his agents. Professor Moore indicates in his treatise that the denial of discovery of such data is usually founded on the general basis of unfairness to the person who engaged the expert. 4 Moore's Federal Practice, Section 26.24.
"Nevertheless, conceding that in private litigation the reports and opinions of experts should be considered a `work product' exempt from compulsory discovery, we are convinced that the `work product' immunity should not extend to the type of information sought in this eminent domain proceeding. We realize that the rule pronounced herein with reference to condemnation proceedings is diametrically opposite to the prevailing rule in ordinary litigation. However we are convinced that there is no inconsistency because both rules are based upon sound public policy when the sphere in which each operates is properly analyzed." (Emphasis supplied) (135 So.2d p. 860)
In Shell, the information sought to be discovered was work product information prepared for the State Road Department. This Court discussed the duty which devolves on public agencies in such cases, as differentiated from that imposed on private litigants, and concluded compulsory disclosure was proper. The Court said:
"Unlike litigation between private parties condemnation by any governmental authority should not be a matter of `dog eat dog' or `win at any cost'. Such attitude and procedure would be decidedly unfair to the property owner. He would be at a disadvantage in every instance for the reason that the government has unlimited resources created by its inexhaustible power of taxation. Moreover it should be remembered that the condemnee is himself a taxpayer and as such contributes to the government's `unlimited resources'." (p. 861)
By footnote, the Court called attention to the fact that the information sought in the case before it then was within a public agency, and therefore "probably * * * subject to inspection by the public generally at all reasonable hours."
An additional policy reason, unstated in the Shell opinion but inherent in it, is that in condemnation cases the initiative to commence litigation rests entirely with the government, regardless of the wishes, fault or actions of the condemnee, a circumstance which rarely occurs in other types of litigation to which the government may be a party. This circumstance justifies the removal *718 of the work product immunity as to the government condemnor.
As is clear from the Shell opinion, this Court decided that discovery of the State's condemnation work product should be subject to discovery, as an exception to the general rule. None of the policy reasons announced apply in purely private litigation. Nor do they appear to pertain to the private litigant in a condemnation proceeding. The Court made no suggestion in Shell that the rule therein announced should apply reciprocally, to permit the State to discover work product information of the condemnee.
This interpretation of the Shell decision is entirely consistent with that of the District Court of Appeal in the case sub judice (Carlson v. Pinellas County, 227 So.2d 703), when it stated:
"[W]e are persuaded that the reasonable rationale of the majority Shell opinion is that the Supreme Court, in recognition of the contrasting `position' of the litigating parties, meant to except only the `governmental authority' from the immunity protection of its work product, in contrast to the immunity protection of the private landowner condemnee. We realize it would have been obiter for the Supreme Court to have extended the exception to include the condemnee's work product, but we believe the majority would have made it clear if it was so intended." (p. 707)
The District Court's decision is entirely consistent with the decision of the Third District Court of Appeal (Motor Union (Aviation) Orion Insurance Co. v. Levenson, 153 So.2d 852 (Fla.App.3rd, 1963)), in which the attempted discovery was not permitted of a doctor expert hired by counsel to help prepare a case, where the expert was not to be called at trial. The District Court noted the plaintiff was subject to examination by the party's own physicians, and said:
"It seems clear the only information which could be expected to be obtained from him was what he found on examining the plaintiff and the records, and his conclusions thereon. No good cause was shown by the defendants to justify deposing this expert hired to inform and advise the plaintiff's attorneys. Under the circumstances, the denial of the discovery deposition was not error, and that order is affirmed. It is the general rule that an expert so employed may not be deposed unless such information is not obtainable elsewhere, or other good cause is shown." (p. 853)
The Court went on to distinguish several other cases, noting that in the dispute before it, "the expert is not to be presented as a witness and no area for useful examination apart from privileged matter was suggested or shown in this case." (pp. 853-854) Also see Hartstone Concrete Products Co. v. Ivancevich, 200 So.2d 234 (Fla.App.2nd, 1967), in which it was stated that merely listing an expert witness as a prospective witness does not waive the work product privilege; Ford Motor Co. v. Cochran, 205 So.2d 551 (Fla.App.2nd, 1968), and Vermette v. Surf Drugs, Inc., 226 So.2d 871 (Fla.App.3rd, 1969).
It is argued that discovery of condemnee's work product should be permitted in all cases at the State's option, because of the decision of the United States Ninth Circuit in United States v. Meyer, 398 F.2d 66 (1968), citing Shell as authority. In that case, the Federal Court rejected the argument that since the information sought is available from other sources, discovery of the government's appraisal information and work product should not be allowed. The Court held that the government's work product was subject to discovery, and that the government may not suppress unfavorable evidence by deciding not to use an unfavorable witness at trial. As is readily perceived, the facts and result in the case are similar to those reached by this Court in Shell; but they are not authority for the conclusion that discovery should be permitted of the condemnee's work product. As to the position that possible witnesses *719 should be permitted to be deposed, the appellate courts of this State have held otherwise; Girten v. Bouvier, 155 So.2d 745 (Fla.App.2nd, 1963), and cases relying thereon.
In the case sub judice, the appraiser Fogarty was employed by the Carlsons, and prepared expert materials which it appears were part of their preparation of the case; he was not to be called as a witness. The State was permitted to discover all information prepared by Fogarty for the Carlsons, although the trial judge did not permit the State to elicit testimony from Fogarty that he had been employed by the Carlsons to prepare the information given in evidence.
The concept underlying fairness in discovery is that each party should be able to discover from its adversary what it cannot otherwise obtain, in order to fully prepare. However, each party at trial must be prepared to succeed or fail on the product of its own work. Absent overriding circumstances, as for example those disclosed in Shell, any party, including the State, in any case, including a condemnation case, has the responsibility of going to trial on its own preparation and work product, not that of the adversary or his experts. This is not to say that discovery should not be permitted in some circumstances, or that it should not be deemed to be waived; our case law has many examples of both these circumstances.
In the case sub judice, a conclusion that discovery of work product should be permitted could be grounded only on the theory that in every condemnation case, the State may fish at will in the work product waters of the condemnee. The policies enunciated in Shell are not consistent with such a position. The same policy factor of inexhaustible resources of the State in preparing for trial makes it unfair for the State to pick over the condemnee's case at will, searching for rebuttal evidence which it need not make initial efforts to develop.
This does not mean that the work product of a condemnee should in all cases be immune from discovery. Recognizing, however, that the initiative to condemn property is taken by the State, it is only fair to permit the decision to commence the discovery process to be made, if it is made at all, by the condemnee. The fair rule is that the State may not initiate discovery in condemnation cases, except as a reciprocal right in those cases when the condemnee has elected to discover the State's work product. Those condemnees who do not wish to explore the State's information should not be exposed to discovery; the policies underlying the Shell decision cannot logically be extended to reach such a result.
We held in Shell that for reasons of fairness grounded in policy, expert testimony which is part of the State's condemnation case is an exception to the immunity given by the work product rule. To extend this rule so as to permit, in all condemnation cases, the discovery of the condemnee's work product by the State, would allow the party in the more powerful position to build its case from the work product of the weaker; the State's interest is sufficiently and fairly protected if its right of discovery is restricted to those cases in which the condemnee has elected to seek discovery under Shell.
The rationale of the majority Shell opinion is that, in recognition of the contrasting "position" of the litigating parties, the "governmental authority" is excepted from the immunity protection of its work product, in contrast to the immunity protection of the private landowner condemnee. This exception should not be extended to include the condemnee's work product unless and until the condemnee has elected to seek discovery under the Shell decision. In the latter event the work product of the condemnee would be subject to discovery by the condemnor.
As so modified, the opinion of the District Court is approved and the writ discharged.
*720 ROBERTS, DREW, CARLTON and BOYD, JJ., concur.
ERVIN, C.J., dissents with opinion.
ERVIN, Chief Justice (dissenting):
I cannot agree with the majority's conclusion that the rationale and policy considerations underlying the decision in Shell v. State Road Department, Fla. 1961, 135 So.2d 857, fashion a "one-way street" operating only in favor of the condemnee gaining access to the information possessed and gathered by the condemning authority's expert appraiser.
I am aware of no post-Shell appellate decision in this State which has undertaken the Herculean task of crystalizing the nature of the qualified discovery immunity accorded an adverse party's expert witness. In Shell we merely assumed, for the purposes of that case, that such immunity accrued automatically to a party's expert witness by virtue of an application of the "work product" rule envisioned in the landmark case of Hickman c. Taylor, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. It now seems to me that perhaps the better reasoned view would not bring expert information automatically within the work product doctrine, but would resolve the obligation to disclose in each situation primarily by application of principles and policies attending the recently developed doctrine of "unfairness." See Proposed Amendments To Civil Rules: Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, 1967, 43 F.R.D. 211, 233-235; United States v. Meyer, 9th Cir.1968, 398 F.2d 66, 73; 4 Moore's Federal Practice, ¶ 26.24 (2d Ed. 1969); 22 Fla.L.Rev. 470 (1970).
By confirming resolution of the instant controversy to policy considerations embedded in the doctrine of "unfairness", I do not in any way intimate that the considerations evolving from the work product doctrine have no significance in the general sphere relating to disclosure of expert information. Indeed, depending on the factual circumstances involved, such considerations[1] may carry considerable importance. The present case, however, is concerned precisely with the discovery of information from a party's expert appraiser solely in a condemnation situation, and for those reasons aptly stated and analyzed in United States v. Meyer, supra, I think objections to discovery of such information on the basis of work product and consideration oriented therein are not well founded.
Reduced to basic dimensions, our undertaking in the present case is similar to our task in Shell, i.e., ascertaining whether under the factual circumstances here involved, policies favoring disclosure outweigh those warranting immunization of the expert's information.
As noted in United States v. Meyer, supra, condemnation litigation is peculiar in that the testimony of expert appraisers is the crux of the trial.
"* * * Thus the pleadings in a condemnation case are wholly uninformative on the only issue to be tried: the amount of compensation to be paid for the property.
"Because land appraisal is complex and technical, usually evidence on the issue of value consists principally of the opinions of opposing experts. These opinions are notoriously disparate. The weight to which an appraiser's opinion testimony is entitled turns upon the validity of the appraiser's premises, procedures, and theories; the soundness of his factual determination; the comparisons he has made; the methods he has followed, and the formulae he has applied. Basically, *721 the trial of a condemnation suit consists of the admission into evidence of the opinions of the opposing appraisers and the factual and theoretical bases upon which they rest, and the testing of those opinions by cross-examination and rebuttal.
"The appraisers' opinions and their factual and theoretical foundation are peculiarly within the knowledge of each appraiser and, to a degree, that of the party who employed him. The opposing party can obtain this information in advance of trial only by discovery. Since this material will constitute the substance of the trial, pretrial disclosure is necessary if the parties are to fairly evaluate their respective claims for settlement purposes, determine the real areas of dispute, narrow the actual issues, avoid surprise, and prepare adequately for cross-examination and rebuttal." United States v. Meyer, supra, at 69.
For the reasons above stated, disclosure in a condemnation case of the information possessed by an adverse party's appraiser no doubt comports with the overriding purpose of our procedural rules "to secure the just, speedy and inexpensive determination of every action."[2] See FRCP 1.010, 30 F.S.A. Accordingly, absent a substantial showing of unfairness to the party whose appraiser is sought to be compelled to divulge information, in this case the landowner condemnee, the issue should be resolved in favor of disclosure so as to fully and liberally promote the purposes of our procedural rules of discovery.
In the area of private litigation, compelled disclosure of or inquiry into the information possessed and prepared by an expert, is generally considered to be unfair to the party engaging the expert. See Moore, Federal Practice, ¶ 22.24 (2d Ed. 1969). Litigants ordinarily incur considerable expense in securing the services of an expert, and it is no doubt oppressive and unjust to the party engaging the expert to permit the opposing party to secure the expert's information and thereby enhance his own case at the expense of his opponent.
In condemnation litigation, however, as opposed to most private litigation, the oppressive and unjust feature above described is not a significant factor. When the government is the party whose appraiser is sought to be compelled to divulge relevant information, the government has virtually unlimited resources with which to fund the expenses of securing the services of such experts and therefore the risk of having its expert compelled to disclose information will not operate to dampen or impede its decision to secure expert services. See Shell, supra. Moreover, the governmental authority is obligated by the charge of effecting the "summum bonum" to secure such expert services despite the risk of having the information disclosed to the advantage and benefit of the condemnee.
Similarly, when the shoe is on the other foot, as typified by the present case, objections to the compelled disclosure of the condemnee's expert appraiser based on the "unfairness" doctrine are likewise obviated by the requirement that the condemning authority provide reimbursement of fees of expert witnesses employed by the condemnee. In this situation, it can hardly be said the condemnee is inhibited in his decision to employ expert appraisers by the risk that the condemnor will gain beneficial information at his expense. Even in a situation such as the present, where the condemnee stipulated that his engaged expert would not testify at trial, policies favoring the allowance of discovery of information possessed and gathered by the expert would seem to outweigh the risk of abuse attending such *722 disclosure. In discussing a corollary situation, the Meyer decision notes:
"* * * Discovery from appraisers not subsequently called as witnesses does not serve to clarify the areas of dispute, narrow the issues, or protect the discoverer from surprise. It is not necessary to prepare for cross-examination or rebuttal of those appraisers' testimony. On the other hand, appraisers not called as witnesses may have discovered facts, applied techniques, or arrived at opinions which, though not acceptable to the government, were nevertheless relevant to the subject matter of the litigation and helpful to the landowner. It would be intolerable to allow a party to suppress unfavorable evidence by deciding not to use [it] at trial." United States v. Meyer, supra, 398 F.2d at 76.
The above reasoning I think is equally persuasive where the condemnee's expert will not be used at trial, even if this means the condemning authority is not necessarily required to foot the fees of the expert's engagement. In a condemnation case as noted above, the amount of compensation for the taking is not only inherently central to the litigation, but by constitutional mandate is also expressly made an "end" in itself to be determined by the litigation process. The duty on the condemning authority to make "just compensation" also embraces the converse duty not to make excessive compensation. Therefore, consistent with the interest of promoting and fulfilling the constitutionally declared goal of "just compensation" a condemnee should not be permitted to withhold or inhibit relevant information on this issue, even though unfavorable to the condemnee's position, simply by deciding not to use its engaged expert at trial. In this situation, the abuse generated by allowing discovery may be mitigated by an order conditioning discovery upon payment by the condemnor of all or part of the expert's fee or by assessing such fees to the condemnor under the statutory provision requiring it pay the costs of the proceedings.
The majority opinion concludes that information possessed by the condemnee's expert appraiser is entitled to protection as work product, but that such immunization or protection vanishes upon an attempt by the condemnee to discover information possessed by the condemning authority's expert. Such a peculiar qualification appears not only inconsistent with the traditional configuration of "work product" status, but also allows the private landowner unilateral power to possibly thwart the policy of effecting "just compensation" and escape the doctrine of "unfairness" applied to the condemnor.
For the reasons above stated, I think the trial court, under the express conditions and limitations it imposed, properly allowed discovery procedure as to the condemnee's expert appraiser, and properly allowed such expert to be called as a witness for Petitioner. Accordingly, I would quash the decision of the District Court and remand the cause for disposition consistent with the views stated herein.
NOTES
[1] For a discussion and analysis of work product oriented considerations relating to discovery of a party's trial preparations, including information gathered and possessed by experts, see Developments In The Law  Discovery, 74 Har.L.Rev. 1027-46 (1960-61).
[2] Our criminal procedure rules even in the sensitive area of fair trials of accuseds favor pretrial discovery. See Cr. P.R. 1.220(e), 33 F.S.A., providing for exchange of witness lists between prosecutor and defense counsel. Cr.P.R. 1.200 requires defendants to give alibi information to prosecutor in advance of trial. Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446.