6

STATE, ex rel. COPELAND v. CARTWRIGHT, et al.
No. 72-6050
Circuit Court, Broward County.
October 13, 1972.

Dan Paul and John-Edward Alley of Paul & Thomson, Miami, for the petitioner.

Harry C. Fischer and Thomas W. Johnston, both of Pompano Beach, for the respondents.

STEWART F. LaMOTTE, Jr., Circuit Judge.

*Opinion and order:* This is a mandamus action brought by Mary Sue Copeland, a citizen of the state of Florida and a reporter for the Miami Herald. The respondents are public servants employed as city manager, planning technician and city clerk by the city of Pompano Beach, a municipality of the state of Florida. Petitioner seeks to inspect certain documents in the possession of one or more of the respondents. §119.01, Florida Statutes, directs that "all state, county and municipal records shall . . . be open for a personal inspection by any citizen of Florida . . ." The documents sought by Miss Copeland are certain site plan reviews of the Pompano Beach Club prepared by respondent Peterson, the planning technician for the city of Pompano Beach. The issue is whether these documents are records which chapter 119, Florida Statutes makes "open for a personal inspection by any citizen of Florida."

On June 30, 1972 this court issued an alternative writ of mandamus requiring respondents and all persons acting under their authority to permit Miss Copeland "to inspect the site plan reviews of the Pompano Beach Club prepared by respondent Peterson, planning technician for the city of Pompano Beach or show cause. . . why a peremptory writ of mandamus compelling such acts . . ." should not issue. Thereafter respondents each filed responses to the alternative writ of mandamus in which —

(i)   demand for inspection by Miss Copeland was admitted;

(ii)   the city manager and the city clerk denied possession of the documents sought by Miss Copeland; and

(iii)  the planning technician admitted possession of the documents sought by Miss Copeland.

The testimony of petitioner and each of the respondents has been heard by the court. The court has reviewed the depositions of respondents Cartwright and Peterson introduced into evidence by petitioner. The court has considered the citations submitted by counsel. This matter is now before the court for decision.

Upon the entire record, the court finds and concludes as follows—

Petitioner Mary Sue Copeland is a citizen of the state of Florida. Respondents are employees of the city of Pompano Beach, a Florida municipal corporation. Respondent Peterson admitted possession of the documents sought. In accordance with the statute, Miss

Copeland properly requested each of respondents to make available for her inspection the documents sought. The planning technician admittedly maintains copies of all site plan reviews. I find that respondents Cartwright and Peterson are custodians of the documents sought.

The city manager is the ultimate superior of the planning technician and hires the planning technician pursuant to his general authority as city manager. Site plan reviews are prepared by the planning technician at the direction of the city manager. The site plan reviews are prepared by the planning technician as part of his duties, on city time, as a city employee and at the direction of the city manager. The planning technician spends approximately one-half day to two days in preparing individual site plan reviews. The planning technician has been directed to prepare the site plan reviews pursuant to the general authority of the city manager.

Staff development committee meetings are called to consider preliminary site plans for major building projects. The site plan reviews are useful in reviewing the preliminary site plans. The site plan reviews are received by all members of the staff development committee in advance of the meetings held by that committee to give the members background data to consider before the committee meets and to zero in on problem areas.

Meetings of the staff development committee are meetings of a municipal authority and therefore subject to the strictures of §286.011, Florida Statutes, the Florida Government in the Sunshine Law. Since meetings of the staff development committee are public meetings, any citizen who desired to would be able to attend these meetings and would have the right to see these records at such a meeting.

In determining whether the documents which petitioner seeks to inspect are public records, we start with the proposition that the documents sought were produced through the expenditure of public monies by a public employee for use by other public employees in conducting the public's business. The records belong to the citizens and not to their employees. Maxwell v. Pine Gas Corporation, 195 So.2d 602, 603 (4 DCA 1967). While some public officials may prefer citizens to have access to records and documents only when they are official, sterile and final, only dishonest governments have anything to fear from an informed citizenry. The divine right of kings and governments has been replaced by a government of laws —

"Public business is the public's business. The people have the right to know. Freedom of information is their just heritage. Without that the citizens of a democracy have but changed

their kings." *The People's Right to Know,* Harold R. Cross, 1953, p. xi.

§119.01, Florida Statutes, states that *all* municipal records *shall* be open for inspection. §119.07, Florida Statutes, exempts from inspection certain public records; however, none of these exemptions are applicable here.

> "The statute applies specifically to 'all' municipal records, and, where the legislature has preserved no exceptions to the provisions of the statute, the courts are without legal sanctions to raise such exceptions by implication . . ." State v. Pace, 159 So. 679 at 681 (Fla. 1935).

In *Pace* inspection was sought of certain records concerning docks and terminals operated by the city of Jacksonville in a proprietary capacity by a citizen competitor. In requiring the city of Jacksonville to permit inspection, the Supreme Court said that the legislature —

> "has extended to any citizen of Florida the unrestricted privilege of examination of the books and records of municipalities in order that such citizens may advise themselves concerning the operation and conduct of the public affairs which such municipalities are authorized to carry on."

The court has had no Florida case called to its attention, nor has the court found any Florida case in which the public's right to inspect is more clearly defined than through the word "all" used in the statute. "All" means all. In ascertaining whether there is a reason for depriving a citizen of his right to inspect these records, the purposes of chapter 119, the Florida Public Records Statute, must be examined to determine the breadth and scope of the right to inspect state, county and municipal records.

It is a general rule of law that "statutes . . . enlarging the right [to public inspection beyond the common law] should be liberally construed in favor of inspection." 72 C.J.S., *Records* §35(b), page 137.

In Fuller v. State, 17 So.2d 607 (Fla. 1944), our Supreme Court had occasion to comment on the necessity for an expansive interpretation of the statute in favor of inspection —

> Under our form of governmental organization, a municipality is one of the integers of democracy; the people who constitute the municipality are its owners and stockholders; its officers are nothing more than its agents. To say that the agent can deny the right of the stockholder to inspect and make copies of the records of the corporation would give countenance to the very evil that Jefferson warned against in his famous aphorism, "Every government degenerates when trusted to the rulers of the people alone. The people themselves are the only safe depositories."

Not only this, to uphold such a doctrine would make rubbish of the well known trilogy of Abraham Lincoln and in place of government of, for, and by the people, we would have government by petty autocrats. I once heard a very distinguished circuit judge say that he never permitted another to feed his dog, that he always performed this duty himself because he wanted his dog to know to whom he was indebted for his daily bread. There is a mine of wisdom in this philosophy. If every *administrative board* had the intellectual keenness to imbibe it and the humility to shape its conduct accordingly, the term bureau and bureaucrat would cease to stink when pronounced and would in turn be assigned a place of respect and favor in the lexicon of democracy. [Emphasis supplied]

Faced with a similar request and denial, the Oregon Supreme Court sitting *in banc* held that preliminary data are state records subject to inspection. MacEwan v. Holm, 226 Or. 27, 359 P.2d 413, 85 ALR 2d 1086 (1961). The Oregon statute provided —

"Every citizen of this state has a right to inspect any public writing of this state, except as otherwise expressly provided by statute." 85 ALR 2d at p. 1091.

The Oregon statute defined public writings as —

"the written acts, or records of the acts, of the sovereign authority, official bodies and tribunals and public officers, legislative, judicial and executive, of this state . . ." 85 ALR 2d at p. 1097.

Oregon law divided public writings into —

"(1) Laws.

(2) Judicial records.

(3) Other official documents.

(4) Public records, kept in this state, of private writings." 85 ALR 2d at p. 1097.

In *MacEwan* the defendant contended that the preliminary data which it collected in connection with a study of nuclear radiation were not public records. In rejecting this contention, the court observed —

It would serve no useful purpose to attempt to frame a general definition of a public record. Whether a record is to be regarded as a public record in a particular instance will depend upon the purposes of the law which will be served by so classifying it. A record may be a public record for one purpose and not for another. Thus a writing may be a public record for the purpose of making it admissible in evidence without authentication, but not for the purpose of constituting constructive notice to a member of the public. 85 ALR 2d at p. 1092.

In an extensive and well considered opinion the court examined numerous cases defining public records and observed that —

> . . . courts have not always been careful to key the definition of "public record" to the purpose for which the term is used in the particular instance, and frequently attempt is made to solve the problem of whether a record should be open to public inspection by applying a definition of "public record" borrowed from cases involving questions other than the right of inspection. 85 ALR 2d at p. 1093.

After reviewing numerous decisions from many jurisdictions, the Supreme Court of Oregon concluded that allowing public scrutiny of governmental documents did not require the same assurances as where the authenticity of the document was in question.

> Writings coming into the hands of public officers in connection with their official functions should generally be accessible to members of the public so that there will be an opportunity to determine whether those who have been entrusted with the affairs of government are honestly, faithfully and completely performing their function as public servants . . . "Public business is the public's business. The people have the right to know. Freedom of information [about public records and proceedings] is their just heritage . . . Citizens . . . must have the *legal* right to . . . investigate the conduct of [their] affairs."

> And the public interest in making such writings accessible extends beyond the concern for the honest and efficient operation of public agencies. The data collected in the course of carrying on the business of government may be sought by persons who propose to use it for their own personal gain. * * * The data gathered by government are available to its citizens for such private purpose. [Citations omitted.] 85 ALR 2d at p. 1093.

The decision of our own Supreme Court in Amos v. Gunn, 84 Fla. 285, 94 So.2d 615 at 634 (1922), was included by the Oregon Supreme Court in its consideration of decisions which had proffered more restrictive definitions of public records —

> It is sometimes said (but usually in cases involving questions other than the right of inspection) that a writing is not a public record unless it is intended to serve as a memorial of some official action or, as it is frequently put, as "evidence of something written, said, or done," or that it is a writing prepared for the purpose of making information available to the public. [Citations omitted.] 85 ALR 2d at pp. 1093-94.

A decision for respondents would require the court to accept a definition similar to these restrictive definitions of public records. Adopting a more expansive definition of public records does no violence to the decision in *Amos* for there the Florida Supreme Court was concerned not with the right of inspection but with

whether procedural irregularities permitted a bill on file with the secretary of state to be attacked. The Oregon Supreme Court also considered the suggestion —

> . . . that only writings representing "ultimate" official action should be regarded as "public records" subject to inspection.
>
> * * *
>
> In accordance with this position it has been held that writings are not public records if they are "merely incidental to the administration of the affairs of the office" . . .
>
> * * *
>
> In a number of cases where, as in the case at bar, the information sought was preliminary data being gathered in the course of a study or investigation or used by the agency in carrying out its duties, it has been held that the writing was not a public record. [Citations omitted.] 85 ALR 2d at p. 1094.

After reviewing decisions in many jurisdictions, I have concluded that, with the possible exception of *MacEwan*, these cases are not directly in point on the issue before me. In some the writing was offered in evidence and a restricted definition of "public record" may be justified on the ground that the writing lacked sufficient guarantee of authenticity. In only one case was inspection denied and there the denial was because there was a statutory provision excepting the writing from inspection.

I have also considered the California public inspection statute which has been narrowly construed by the California courts. The California courts have held that records are regarded as public records only if they fulfill two requirements — they must be (1) "official documents"; and (2) "the written acts, or records of acts" of public officials. This narrow construction has been justly criticized. The greater public interest and the right of the public to know how *its* business is being conducted requires that in defining the scope of the right of inspection under chapter 119, Florida Statutes, the term public records be given a liberal construction. I am of the opinion that a broad construction of the statute requiring that inspection by any citizen be permitted and a definition of public records which embraces all writings which are in the custody of public servants will best serve the public interest and carry out the intent of our legislature in enacting chapter 119, Florida Statutes. Without access to the records prepared by government, the rights of citizens guaranteed by the First Amendment may be effectively abrogated by the government, for the right to speech without knowledge is meaningless.

I fully subscribe to the following analysis of the Supreme Court of Oregon —

For the purpose of deciding whether a writing is subject to public inspection, we regard all data gathered by the agency in the course of carrying out its duties, irrespective of its tentative or preliminary character, as falling within the definition of "records and files." The need for data to serve the purposes we have mentioned above may be just as great when the data are in a raw or tentative state as when they are fully digested and memorialized by some ultimate official action. In some instances incompetence or dishonesty in public office may best be discovered at a preliminary stage when the officials in charge are merely preparing for final action. Likewise, from the standpoint of the use of the material by the citizen for his own private purposes, the raw data being gathered may be more helpful to him than the official conclusion summarized in a final report. *The drawing of a distinction between writings representing tentative action and writings memorializing ultimate action is objectionable, not only because it is inconsistent with the principle which underlies our statutes making public writings freely available for inspection, but also because it provides a device by which a public official can hinder a citizen's legitimate attempt to obtain writings which are clearly within the strictest definition of a public record.* [Emphasis supplied.] 85 ALR 2d at pp. 1095-96.

This is precisely what respondents have done here. Although respondent Cartwright, the city manager, contended that disclosure of the preliminary site plan reviews sought by petitioner Copeland could be detrimental to the public, respondents did not even offer any proof on this subject. This court is of the opinion that in determining whether the public may inspect documents prepared by government employees the fundamental right of citizens to access to records prepared by their employees must be contrasted with the incidental right of the governmental body to be free from unreasonable interference.

Harold Cross aptly summarized the correct approach to public inspection statutes almost 20 years ago —

"The public business is the public's business. The people have the right to know. Freedom of information about public records and proceedings is their just heritage. Citizens must have the legal right to investigate and examine the conduct of their affairs. They must have a simple, speedy means of enforcement. These rights must be raised to the highest sanction. The time is ripe. The First Amendment points the way." Cross, *The People's Right to Know,* at p. 132.

The only judicial authority cited by respondents is the decision of the Supreme Court of Florida in Lee v. Beach Pub. Co., 173 So. 440 (Fla. 1937). Respondents cite *Lee* for the proposition that public policy requires that certain public records or documents be

kept secret and free from common inspection. Documents cited by the court in *Lee* as being required by public policy to be kept secret were "diplomatic correspondence and letters and dispatches in the detective police service or otherwise relating to the apprehension and prosecution of criminals."

The three Attorney General opinions (1961, 061-102, June 29, 1961; 1966, 066-88, September 15, 1966; 1971, November 23, 1971) cited by respondents are not binding on this court. Nevertheless, I have considered the reasoning advanced in these three opinions as well as other Attorney General opinions (1972, 072-168, May 18, 1972; 1971, opinion to N. R. Boutih, April 30, 1971; 1957, 057-157, June 10, 1957; 1950, 050-316, June 21, 1950) which purport to place limitations on the public's right of inspection. I reject the reasoning of these opinions as being unduly restrictive of the public's fundamental right of access to records prepared by its employees in order that the public may know how its business is being conducted.

Respondents also appear to articulate some type of work product exemption in support of the governmental secrecy which they seek. In Shell v. State Road Department, 135 So.2d 857, 860 (Fla. 1961), the Supreme Court of Florida determined that the "work product" exemption from compulsory discovery should not extend to reports and opinions of experts in eminent domain proceedings. In announcing this new rule, the court stated —

"As a matter of fact the files of a governmental authority should be and probably are subject to inspection by the public generally at all reasonable hours." 135 So.2d at 860 n.l.

*Shell* was reaffirmed y the Supreme Court in Pinellas County v. Carlson, 242 So.2d 714 (Fla. 1971). In commenting on the *Shell* decision, the United States Court of Appeals for the Fifth Circuit after quoting the above material from *Lee,* stated in a footnote —

"The policy of access to government records may be of sufficient force to require access be granted where if the records were private they would not be accessible." Caswell v. Manhattan Fire & Marine Insurance Co., 399 F.2d 417 at 423 n. 7 (5th Cir. 1968).

There is no "work product" exemption in Florida upon which respondents may rely in opposing inspection by petitioner of the preliminary site plan reviews.

Having considered all of the evidence before me, all legal authority cited and being fully advised, upon the entire record, it is ordered that a peremptory writ of mandamus shall issue requiring respondents and all persons acting under their authority to permit peti-

tioner Copeland to inspect the site plan reviews of the Pompano Beach Club prepared by respondent Peterson.

## PEREMPTORY WRIT OF MANDAMUS

TO: John Gilbert Cartwright as City Manager of the City of Pompano Beach and Frederick Rodman Peterson as Planning Technician of the City of Pompano Beach, respondents.

For the reasons set forth in the opinion and order entered in this action this day, it is

Ordered that each of you as respondents in this action and all persons acting under your authority shall permit Mary Sue Cupeland to inspect the site plan reviews of the Pompano Beach Club prepared by respondent Peterson, Planning Technician for the City of Pompano Beach.

Done and Ordered in chambers at the Broward County Courthouse, Fort Lauderdale, Florida this 13th day of October, 1972.

*Stewart F. LaMotte, Jr.*
Circuit Judge